# MACKEY *v.* PETERS.

LUNATICS, SUITS ON BEHALF OF; ANNULMENT OF MARRIAGE; NEXT FRIEND; EQUITY PRACTICE.

1. A proceeding in equity on behalf of a lunatic to annul a marriage contracted by him during his lunacy is properly instituted by his next friend, and not by his committee, under § 1286, D. C. Code, but the committee should be made a party defendant to such a proceeding.

2. "Next friend" does not mean the committee or trustee of a lunatic, or the guardian of a minor, or the husband of a married woman, but is one who, without being a regularly appointed guardian, acts for the benefit of an infant, a married woman, or other person not *sui juris*.

3. Section 986, D. C. Code, providing that a marriage contract may be declared void when the "marriage was contracted during the lunacy of either party," and § 1285, which provides that the marriage of "a person adjudged to be a lunatic shall be void from the time its nullity is decreed," when construed together, do not mean that a lunatic must be adjudged insane in an independent proceeding before a suit to annul the marriage may be instituted, but the adjudication of lunacy referred to in § 1285 is adjudication of lunacy in the suit brought for the annulment of the marriage; distinguishing *Groff* v. *Miller*, 20 App. D. C. 353.

No. 1324.   Submitted June 3, 1903.   Decided June 25, 1903.

HEARING on an appeal (specially allowed) by the defendant from orders of the Supreme Court of the District of Columbia, overruling a plea and a demurrer to a bill in equity filed by the next friend of a lunatic to annul a marriage alleged to have been contracted during his lunacy.                    *Affirmed.*

The COURT in the opinion stated the case as follows:

This is a suit in equity instituted in the supreme court of the District of Columbia in the name of Eugene Peters, a lunatic, by Hannah H. Parsell, his aunt and nearest paternal relative, as his next friend, to annul a marriage between him and the appellant ,Clara Louise Mackey, alleged to have been fraudulently procured by the said appellant, when the said Eugene Peters was in a condition of lunacy. The marriage is stated to have occurred on February 13, 1899, in the State of Arkansas; and on February 18, 1901, the said Eugene Peters was adjudged in and by the supreme court of the District of Columbia to be a lunatic, and three members of the bar of the District were appointed a committee to take charge of his person and of his estate, and they entered upon the performance of their duties.

The bill was filed on December 19, 1902, through counsel other than his committee; and the committee were not in any manner made parties to the proceeding; nor did it appear in the bill why they did not act in the matter. In fact, they were not named at all and there was no reference to them. The appellant, who was the sole defendant, made defense by way of plea to the effect that the suit should have been instituted by the committee, and not by next friend. This plea was overruled, and the defendant was given time to demur to or answer the bill. She filed a demurrer to the effect that it was not alleged in the bill that at the time of the marriage the said Eugene Peters was an idiot, or had been adjudged to be a lunatic, in which condition only, as it is claimed, a marriage is void in the case of a person *non compos mentis* under the law now in force in the District of Columbia. This demurrer also was overruled and the defendant was required to answer.

Thereupon the defendant applied to this court and was allowed a special appeal from the orders overruling her plea and demurrer, and the cause is now before us on such special appeal.

*Mr. A. S. Worthington* and *Mr. M. J. Colbert,* for the appellant:

1. The court below erred in overruling the plea, and in not

holding that the suit could be instituted only by the committee. We do not understand that it is claimed that, under the general principles regulating the practice in chancery, a suit can be instituted in the name of a lunatic, when his person and estate have been placed in charge of a committee, by anybody but the committee. The contention here seems to be that this general rule is changed by the Code. We refer, however, to the following authorities as showing how strongly the general rule upon which we rely has been maintained: *Row* v. *Row,* 53 Ohio State, 249; *Covington* v. *Neftzer,* 33 Am. St. Rep. 261, 140 Ill., 608 (this case contains a full review of the authorities); *Dorsheimer* v. *Roorback,* 18 N. J. Eq. 438; *Maloney* v. *Duvey,* 127 Ill. 395; *Pucket* v. *Johnson,* 45 Texas, 550; *Gorham* v. *Gorham,* 3 Barb. Ch. (N. Y.) 24; *Hinton* v. *Bland,* 81 Va. 588. Where there is a committee of a lunatic, every suit respecting the person or estate of the lunatic must be in the name of the committee. But where no committee of a lunatic has been appointed, or where the committee appointed has been removed, or a committee has interests adverse to the lunatic, a suit may be brought in the name of a lunatic, by his next friend, approved by the court. *Bird's Com.* v. *Bird,* 21 Gratt. (Va.) 712. A party claiming an interest in the estate of an insane ward is not a necessary or proper party in a suit to annul a marriage on the ground of insanity, since the guardian's right to control the estate must be first determined by the decree. *Waymire* v. *Jetmore,* 22 Ohio State, 271. In a suit for divorce against an insane person the court has no power to order the guardian to pay alimony when he was not made a party to the suit and the suit had proceeded against a guardian *ad litem* only. *Tiffany* v. *Tiffany,* 84 Iowa, 122. The care and commitment of the custody of the persons and estates of idiots and lunatics are the prerogative of the Crown, and are always intrusted to the person holding the great seal, by the royal sign manual. By virtue of this authority, upon an inquisition finding any person an idiot or lunatic grants of the custody of the person and estate of the idiot or lunatic are made to such persons as the lord chancellor or lord keepers or lords commissioners for the custody of the great

seal, for the time being, think proper. Idiots and lunatics, there-
fore, sue by the committees of their estates. Sometimes, in-
deed, informations have been exhibited by the Attorney General
on behalf both of idiots and lunatics, considering them as under
the peculiar protection of the Crown, and particularly if the
interests of the committee have clashed with those of the lunatic;
but in such cases a proper relator ought to be named. Mitford's
Tyler's Eq. Pl., p. 124, and citing 3 P. Wms. 106; *Ex parte
Pickard,* 3 Ves. & B. 127; 1 Cases in Chan. 19; *Ridler* v. *Ridler,*
1 Eq. Cas. Abr. 279; *Atty. Gen.* v. *Parkhurst,* 1 Cas. in Ch.
112; *Atty. Gen.* v. *Woolrich,* 1 Cas. in Ch. 153; *Atty. Gen.* v.
*Panther,* Dick. 748; *Atty. Gen.* v. *Tyler,* Dick. 378. See also
*Woolfryes* v. *Woolfryes,* Rolls. Feb. 17, 1824, MSS.; 1 Daniels'
Ch. Pr., 4th ed. p. 84.

2. Counsel for the appellee, however, rely upon §§ 1285 and
1286 of the Code. In this connection, § 104 has weight. It
provides that in suits against insane persons process shall be
served on the committee when there is one.

We submit that, construing §§ 115*b* and 1286 together, the
natural and reasonable meaning of the language employed is
that where a committee of a lunatic has been appointed the com-
mittee shall always represent the lunatic in legal proceedings,
subject to the control of the equity court, and that the power
given in § 1286 to a next friend to institute a suit on behalf of
a lunatic in a particular case must be confined to cases in which
no committee has been appointed. The reasoning of this court
in *Groff* v. *Miller,* 20 D. C. App. 353, and the cases cited by
Chief Justice Alvey in delivering the opinion in that case, are
so full and clear that we deem it unnecessary to cite further
authorities in support of this contention.

But even if this were not so, and §§ 1285 and 1286 are taken
together, as they must be, it would seem that the authority of the
next friend, given by § 1286, is limited to the class of cases
mentioned in the next preceding section,—that is, to cases in
which it is sought to have set aside "the marriage of an idiot or
a person adjudged to be a lunatic." There being no averment
in this bill, either that Peters was an idiot, or that prior to his

marriage he had been adjudged to be a lunatic, the case is not brought within the statute. This would seem to be so even if there were no authority given anywhere to a committee to institute such a proceeding. But since adverse counsel are compelled to admit that the general rule is that the suit should be brought by the committee where a committee is in existence, and rely upon an exception to that general rule, which they claim is contained in § 1286, they should bring themselves within the very terms of the exception.

3. The court below erred in overruling the demurrer, and in not holding the bill was defective, because it did not aver, either that Peters was an idiot at the time of his marriage, or that prior to his marriage he had been adjudged to be a lunatic. §§ 965 and 966, Code D. C.

Section 965 refers to the provisions of chapter 43. The only provisions of chapter 43 relating to the subject of annulment of marriage are the provisions of §§ 1285 and 1286.

It will be seen that there is an apparent inconsistency between §§ 966 and 1285. One provides for annulment of the marriage where it was contracted "during the lunacy of either party;" the other where one of the parties was "an idiot or a person adjudged to be a lunatic."

In this respect it is submitted that § 1285 must be regarded as a definition of § 966. The particular restricts the general, especially where the particular comes last. The ruling of the court below practically wipes out that part of § 1285 which relates to idiots and lunatics. This was clearly wrong. *Groff* v. *Miller*, 20 D. C. App. 353, and cases there cited.

*Mr. J. W. Echols* and *Mr. Arthur Peter* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

1. The first question raised is whether this suit can be maintained when instituted by a next friend and not by the committee of the lunatic.

Undoubtedly the general rule is that when a committee has

been appointed for a lunatic all suits for his benefit or for the benefit of his estate should be instituted by such committee, and all suits against him should name such committee and give notice to the committee to defend. This rule does not seem to be questioned or controverted by anyone in this case. It is a legitimate result of the power of chancery over the persons and estates of persons *non compos mentis,* which power, long existing in the court of chancery as representing in this regard the sovereignty of the State, it has been thought proper to set forth expressly in the present Code of law of this District, where, in section 115*b,* it is said:

"The said court shall have full power and authority to superintend and direct the affairs of persons *non compos mentis,* and to appoint a committee or trustees for such persons after hearing the nearest relatives of such persons, or some of them, if residing within the jurisdiction of the court, and to make such orders and decrees for the care of their persons and the management and preservation of their estates, including the collection, sale, exchange, and reinvestment of their personal estate, as to the court may seem proper."

As has been repeatedly said in such cases, the court acts as *parens patriæ,* armed with the power of the State, and committees and trustees are only its instrumentalities to carry its orders into effect. Of course, the guardianship by the court should not be unduly interfered with by the unauthorized and unwarranted institution of suits for or against the lunatic by persons other than those appointed by the court for the purpose, or without making such persons parties to the proceedings.

But a suit to annul the marriage of a lunatic is a peculiar proceeding. Strictly speaking, perhaps we might assume that it is not one of the things committed to a committee or trustee, as it does not seem to concern his person or his property in the sense of the statute. Yet it could not be held that the committee of a lunatic could not very properly institute a suit to annul his marriage, if there was ground for such suit. But § 1286 of the Code specifically provides that any such suit may be instituted by next friend. This section provides as follows:

"A proceeding to declare the nullity of a marriage may be instituted in the case of an infant under the age of consent by such infant, through a next friend, or by the parent or guardian of such infant; and, in the case of an idiot or lunatic, by next friend."

Now, if any force or effect is to be given to this section, it must be held to authorize the institution of the present suit in the manner and by the person by whom it has been instituted. The Code had already provided, in § 115*b*, above cited, for the appointment of committees for insane persons; and it would have been easy enough for the framers of the Code to have said in § 1286 that suits for nullity of marriage of a lunatic should be instituted by his committee, if there was one, if such was their intention. They did not say so, and we are not to assume that they did not mean what they said. Whether they regarded a suit of this nature as one which in many cases a committee would be incapacitated from instituting, it is perhaps immaterial to inquire. But plainly there are many cases in which a committee would be directly interested in resisting the institution of such a suit. It is most natural, and it is of most frequent occurrence, that the husband or wife of an insane person is made the committee or trustee of such person. Assuredly it would be most absurd to assume that such husband or wife will institute a suit, or is a proper person to institute a suit, to establish his or her own unlawful act. Again, a trustee or committee might be appointed on the nomination of a husband or wife of the insane person; and there would be a manifest impropriety in devolving the institution of a suit of this nature upon a person so appointed.

The expression "next friend," in connection with proceedings in equity, has a definite and well-established meaning. It does not mean the committee or trustee of a lunatic, or the guardian of a minor, or the husband of a married woman. Bouvier in his Law Dictionary says that a next friend is "one who, without being regularly appointed guardian, acts for the benefit of an infant, married woman, or other person not *sui juris*." And Daniell in his work on Chancery Pleading and Practice, with special reference, it is true, to infants, says:

"When an infant claims a right or suffers an injury on account of which it is necessary to resort to the extraordinary jurisdiction of the court of chancery, his nearest relation is supposed to be the person who will take him under his protection, and institute a suit to assert his rights or to vindicate his wrongs; and it is for this reason that a person who institutes a suit on behalf of an infant is termed his *next friend.* But, as it frequently happens that the nearest relation of the infant himself withholds the right, or does the injury, or at least neglects to give that protection to the infant which his consanguinity or affinity calls upon him to give, the court, in favor of infants, will permit any person to institute suits on their behalf, and whoever thus acts the part which the nearest relative ought to take is also styled *the next friend* of the infant, and is named as such in the bill. And it is to be observed that, although an infant has a guardian assigned to him by the court, or appointed by will, yet where he is plaintiff the course is not to call him by that name, but to call him the next friend."

While, therefore, a lunatic usually sues by his committee, when there is one, and the committee may and often does act as *next friend,* yet there is a well-recognized distinction in the law between the two terms and the two offices to which they refer; and the framers of the Code must be supposed to have had this distinction in view when they wrote the several sections which have been cited. And clearly they had good reason for providing that suits for nullity of marriage should be instituted by next friend, and not necessarily by the committee of a lunatic. At the same time it would seem to be proper, in accordance with reason and authority, that the committee of a lunatic, in view of the fact that it is his duty to protect the general interest of the lunatic, should be made a party defendant to such a suit as the present.

It may be added that, if the construction claimed by the appellant as proper to be given to §§ 1285 and 1286 of the Code considered together is correct, then the conclusion here reached is greatly strengthened.

Section 1285 provides that the marriage of an idiot and of a

person *adjudged* to be a lunatic may be declared null and void; and it is argued that the right of a *next friend* to institute suit in the name of a lunatic for the annulment of a marriage is to be limited to cases where there has been a previous adjudication of lunacy.    But this would seem to be the very case above all others where a committee, and not a next friend, should institute the suit, if the appellant's theory be correct.    . For an adjudication of lunacy implies or presumes the appointment of a committee; and yet in the face of such adjudication and appointment of committee it is expressly provided that, not the committee, but a next friend, is to bring the suit.

We are of opinion that this suit was properly instituted by Hannah H. Parsell as the next friend of Eugene Peters, but that the committee appointed for him should have been made defendants.

2. The second question raised arises under the demurrer, wherein it is claimed that the bill is defective, inasmuch as it does not allege that at the time of the marriage or prior to the marriage Eugene Peters had been adjudged to be a lunatic. The contention is that sections 966 and 1285 of the Code are apparently inconsistent; that section 1285 must be regarded as a definition and restriction of section 966; and that this latter section restricts suits for the nullity of marriage of lunatics to cases where the lunatics have previously been adjudged as such by decree of court.    We cannot accede to the correctness of this contention.

Section 966 is contained in the chapter 22 of the Code, which is devoted to the subject of divorce.    It is in the following terms:

"A divorce from the bond of marriage may be granted only where one of the parties has committed adultery during the marriage:    *Provided,* That in such case the innocent party only may remarry, but nothing herein contained shall prevent the remarriage of the divorced parties to each other:    *And provided,* That legal separation from bed and board may be granted for drunkenness, cruelty, or desertion:    *And provided,* That marriage contracts may be declared void in the following cases:

"First. Where such marriage was contracted while either of the parties thereto had a former wife or husband living, unless the former marriage had been lawfully dissolved.

"Second. Where such marriage was contracted during the lunacy of either party, unless there has been voluntary cohabitation after the lunacy, or was procured by fraud or coercion.

"Third. Where either party was matrimonially incapacitated at the time of marriage, and has continued so.

"Fourth. Where either of the parties had not arrived at the age of legal consent to the contract of marriage (unless there has been voluntary cohabitation after coming to legal age), but in such cases only at the suit of the party not capable of consenting."

Section 1285, as well as § 1286, heretofore cited, is contained in chapter 43 of the Code, which is devoted to the subject of marriage. Section 1283, with which the chapter begins, provides in terms that certain marriages "shall be absolutely void *ab initio* without being so decreed, and their nullity may be shown in any collateral proceedings." These were marriages between persons standing to each other in certain degrees of kindred, and persons either of whom had been previously married, when the marriage had not been terminated by death or a decree of divorce. Section 1284 provided that any such marriages might also be declared by judicial decree to have been null and void. Then follows the section 1285, here invoked, which provides for the invalidation of certain other marriages from the time of decree only. It is in the following words:

"The following marriages in said district shall be illegal, and shall be void from the time when their nullity shall be declared by decree, namely:

"First. The marriage of an idiot or of a person adjudged to be a lunatic.

"Second. Any marriage the consent to which of either party has been procured by force or fraud.

"Third. Any marriage either of the parties to which shall be incapable, from physical causes, from entering into the married state.

"Fourth. When either of the parties is under the age ot consent, which is hereby declared to be sixteen years of age for males and fourteen for females."

This last provision was introduced by the amendatory act of June 30, 1902.

Following this section 1285 is section 1286, heretotore ci+ed, which provides that, in the case of an idiot or lunatic, suit for the annulment of the marriage may be instituted by next friend.

It seems to us, upon consideration of these enactments, that, while there is apparent duplication, there is no real inconsistency between the several provisions. Both may well stand together. In treating of the subject of divorce the Code made a radical departure from previously existing law in limiting the grounds of divorce from the bond of matrimony to one cause, that of adultery. But, inasmuch as there were cases where the bond of matrimony existed in appearance and yet was without proper foundation in valid contract, it was deemed proper to reserve, under a proviso, the previously existing provisions of law, which really may be regarded rather as provisions of natural right, than mandates of the municipal law, under which marriages might be declared void when there was no proper foundation for them. The purpose was to preclude any implication that the restriction of the grounds of divorce to the one ground of adultery involved the repeal of the jurisdiction of courts of equity to decree the nullity of marriages for sufficient cause existing at the time of marriage.

When afterwards in the same statute the framers of the Code came to deal with the subject of marriage, it was found necessary to some extent to go over the same ground again in enacting what marriages should be regarded as illegal. There a distinction was made between absolutely void and voidable marriages, and in the latter category were included all those which in the previous section 966 had been reserved as proper subjects for judicial decree. But in section 966, in this connection, the words used were "where such marriage was contracted during the lunacy of either party," while in § 1285 the words were "the marriage of an idiot or of a person adjudged to be a lunatic."

We do not think that either of these provisions was intended to be a limitation upon the other. Undoubtedly the same thing was meant in both provisions. It would be absurd to assume that a person who has been allured or entrapped into a marriage with an insane person should be required to procure an adjudication of such insanity in an independent proceeding before he or she could be permitted to institute a suit directly for the annulment of the marriage. This would be an onerous limitation of natural right which we can not suppose the framers of the Code to have intended and it is not necessary so to construe the statute. Full force and effect will be given to § 1285, if the adjudication of lunacy referred to therein is construed to mean adjudication of lunacy in the suit instituted for the annulment of marriage, although perhaps such adjudication *per se* might not authorize the appointment of a committee, as under § 115*b* of the Code, which requires a direct proceeding for the purpose.

Under the Code, as it will be noticed, as well as under previous law, lunacy of itself does not render a marriage absolutely void *ab initio,* as in the cases mentioned in § 1283, but only voidable by decree. The parties are entitled to treat void marriages as absolutely nonexisting, and to proceed as though they had never been entered into; but the invalidity of the voidable marriages mentioned in § 1285 must be established by decree before they can be safely disregarded. It is in this connection and for this purpose only that adjudication is required of insanity. The statute does not contemplate two distinct and independent proceedings.

The case of *Groff* v. *Miller,* 20 App. D. C. 353, cited by the appellant in support of her contention, in our opinion is not relevant to the present issue. There it was a question of two different provisions of the Code which were palpably and hopelessly inconsistent with each other, and which nullified each other, unless they could be applied to different classes of cases. We found by reference to other provisions of the Code that they could be made to apply to different classes of cases, and therefore sustained both provisions. Here we find not inconsistency, but at most some apparent qualification or restriction which

upon examination proves to be no restriction. The case of *Groff* v. *Miller* appears to us to be an authority against the appellant's contention, rather than in favor of it.

We are of opinion that the rulings of the court below in the premises were right and proper, and that they should be, and they are hereby, affirmed with costs.

The cause will be remanded to the Supreme Court of the District of Columbia for further proceedings therein according to law, and with leave to the complainant to amend the bill of complaint by making the committee of the lunatic parties thereto as defendants. And it is so ordered. *Affirmed.*