[No. 11818.   Department One.   October 9, 1914.]

PHILIP R. WAUGHOP, *Respondent*, v. NELLIE WAUGHOP, *Appellant*.[1]

MARRIAGE — ANNULMENT — INCOMPETENCY — FRAUD — BURDEN OF PROOF. As the law presumes sanity, one attacking a marriage on the ground of his incompetency must establish the fact by clear and convincing evidence, but less evidence is required to annul a marriage induced by fraud or artifice.

SAME — ANNULMENT — INCOMPETENCY — EVIDENCE — SUFFICIENCY. There was sufficient evidence to warrant the annulment of a marriage on account of plaintiff's mental incompetency, and defendant's fraud in procuring it, where it appears that the plaintiff, a physician 46 years of age, afflicted with insomnia and great mental worry, was but slightly acquainted with the defendant about January 26, that in a day or two he came completely under her influence at her sanitarium, where she administered drugs in excessive quantities to produce sleep, that they applied for a marriage license February 4th, which was refused after two physicians had examined plaintiff and reported him incompetent from the excessive use of drugs, notwithstanding which they were hastily married at midnight, and lived together until he recovered control of his mental faculties, on February 12, when he left her and brought action the next day; that she had continued to give him drugs until February 9th or 10th, and he testified that he had no memory of either a courtship or a marriage, and was corroborated by all the circumstances.

[1]Reported in 143 Pac. 444.

SAME—ACTION TO ANNUL—COSTS TO WIFE. In an action by a husband to annul a marriage on account of incompetency and fraud, it is not error to refuse costs to the wife, in granting an annulment, where it appears that she was not blameless.

Appeal from a judgment of the superior court for King county, Smith, J., entered July 2, 1913, upon findings in favor of the plaintiff, annulling a marriage, upon a trial on the merits to the court. Affirmed.

*Thomas A. Meade* and *R. E. Morris,* for appellant.

*Walter A. Keene, Richard Winsor,* and *J. H. Buchanan,* for respondent.

Gose, J.—This is an action to annul a marriage because of the alleged mental incapacity of the plaintiff at the time the marriage ceremony was performed. The plaintiff prevailed below. The defendant has appealed.

The respondent alleges that he was mentally incompetent to enter into a marriage contract when the marriage took place, and that, as soon as his competency was restored, he ceased to live with the appellant. The appellant answered, denying the respondent's incompetency at the time of the marriage, and alleging (1) that, if he was then incompetent, he consummated the marriage by enjoying its privileges after the disability ceased; and (2) that he ratified the marriage after he became competent.

The law presumes sanity rather than insanity, and competency rather than incompetency. It follows that one who asserts his incompetency to enter into a contract, whether it be a contract of marriage or one of another nature, must establish his incompetency at the time the contract was entered into by clear and convincing evidence. *Thorne v. Farrar,* 57 Wash. 441, 107 Pac. 347, 135 Am. St. 995, 27 L. R. A. (N. S.) 385. It is equally well settled that, where one is induced to make a contract by the artifice or fraud of the other party to the contract, less evidence will suffice to annul it. Bishop, Contracts (Enlarged ed.), page 390; Bishop, Contracts (2d Enlarged ed.), § 964.

If the respondent's incapacity was such that he was incapable of understanding the nature of the contract; that is, incapable of understanding the obligations assumed by the marriage, or if he was in a state of mental bewilderment to the extent that he yielded without demur to the suggestion of the appellant and she procured the marriage to be entered into, he has a right to secure its annulment unless he consummated or ratified it after his competency was restored. *Cole v. Cole*, 5 Sneed (Tenn.) 57; *Dunphy v. Dunphy*, 161 Cal. 380, 119 Pac. 512, Ann. Cas. 1913 B. 1230, 38 L. R. A. (N. S.) 818; *Hagenson v. Hagenson*, 258 Ill. 197, 101 N. E. 606.

" 'The true test in actions to annul a marriage on account of insanity at the time of the marriage,' says Nelson (Divorce and Separation, § 658), 'is whether the party was capable of understanding the obligations assumed by marriage.' " *Dunphy v. Dunphy, supra.*

It needs no argument to show that, if the respondent was mentally incompetent to enter into the marriage contract, or if he was so mentally deranged that he did whatever the appellant suggested, there could be neither consummation nor ratification so long as the incapacity or the derangement and undue influence continued. *Avakian v. Avakian*, 69 N. J. Eq. 89, 60 Atl. 521; *Gillett v. Gillett*, 78 Mich. 184, 43 N. W. 1101.

The facts, in brief, are these: The respondent is a physician, forty-six years of age, and the appellant is a nurse, thirty years of age. The respondent had been for many years afflicted with insomnia, and had at times taken drugs in large quantities to overcome it. His mother, to whom he was greatly devoted, had been ill for some time and he had been her physician and nurse. Her condition grew worse, and he called in Dr. Winslow. On January 26, 1913, her condition was so alarming as to cause the respondent great mental worry. Prior to that date, he had casually met the appellant two or three times. On and after that date, the

appellant visited his home daily and, after a day or two, kept him at her sanitarium at nighttime and gave him drugs and hot baths, as she says, to produce sleep. She claims that they became engaged about the 30th of January. He says that he has no recollection of either a courtship or engagement. She kept him under her control until February 4. On the forenoon of that day, they applied for a marriage license, which the auditor, at the suggestion of the respondent's friends, refused to issue. In the afternoon, they met at the home of Dr. Powers, who was the respondent's pastor. The respondent was then examined by Doctors Winslow and Nicholson. Dr. Winslow is a specialist in the effect of drugs. Dr. Nicholson has specialized in mental and nervous diseases. They agreed that the respondent was not then mentally competent to enter into the marriage relation owing to excessive use of drugs, and so advised the appellant. Dr. Powers had theretofore declined to perform a marriage ceremony because of respondent's mental condition. Despite the advice of the physicians, the advice and protest of Dr. Powers, and the earnest protest of the respondent's relatives, they procured the license at 11:30 that night and were married at midnight. They lived together at the sanitarium conducted by the appellant from February 4 until February 12, when the respondent left the appellant. On February 13, he brought this action to annul the marriage.

There is great conflict in the testimony. Doctors Winslow and Nicholson, who examined the respondent a few hours before his marriage, say that he was incompetent to contract at the time of the marriage. A number of his relatives and friends gave like testimony, after detailing the facts which formed the basis of their opinion. On the other side, a physician who never saw respondent until the trial, a number of his friends, and others, say that he was normal. The respondent testified that he had no recollection of either a courtship or a marriage, and that he could recollect very little that occurred between January 26 and February 12. The

appellant admits administering drugs to him, but denies that she gave him enough to produce mental incapacity. All the larger circumstances of the case corroborate the respondent. He was hardly acquainted with the appellant. If the testimony of a number of witnesses may be believed, he could not remember her name after she claims they became engaged. At least one witness testified that he expressed a fear that she would take his life. The slight acquaintance, the haste in entering into the marriage relation, the subsequent neglect of his mother who was dangerously ill, the fact that he gave heed to his mother's suggestion that he should marry the appellant, given at a time when, Dr. Winslow says, she was delirious and incompetent, and the further fact that he was taking drugs in large quantities, all point to his incompetency. He seems to have been absolutely dominated by the appellant. Whatever she willed, he did. He was mere putty in her hands. She continued to give him drugs until the 9th or 10th of February. On or about the 12th of February, he regained control of his faculties, and at once left her and took immediate steps to secure an annulment of the marriage.

Measured by the rules we have announced, we think the court correctly decided that the respondent was mentally incompetent at the time of the marriage, and that the marriage was not validated by consummation or ratification. It is needless to dwell upon the testimony. The statement contains nearly a thousand pages. The abstracts contain nearly three hundred pages. The cause has been exhaustively argued in the briefs. We think it was correctly decided on the merits.

There was no error in disallowing the appellant costs and attorney's fees. If she were blameless, a different question might be presented.

The judgment is affirmed.

Crow, C. J., Ellis, Main, and Chadwick, JJ., concur.