### LUCILE MELTON MARTIN v. JOE MARTIN

26 So. (2nd) 901          June Term, 1946 .
July 26, 1946          Division A

*E. Paul Beatty, Philip N. Jobson* and *A. C. Franks,* for appellant.

No appearance for appellee.

ADAMS, J.:

Appellant sued to annul her marriage to one Joe Martin. A decree pro confesso was entered against Martin and the cause referred to a master who took testimony and recommended the granting of the relief prayed for. The chancellor held that the evidence did not show appellant was not "in her right mind when she married the defendant" and denied the relief.

From our study of the record it is shown without contradiction that appellant never consented to the marriage and was not aware of it until several hours after the ceremony had been performed; that she never ratified or in any way

consummated the marriage, but, on the contrary, promptly disavowed it. It further appears that Martin probably drugged her in order to have her enter into the marriage ceremony; that when she regained her normal faculties Martin had robbed her of a substantial amount of money. At that time Martin posed as a man in the armed forces of our country but in fact he was AWOL and subsequently was sentenced to a military prison. It was established that Martin's reputation was bad and that appellant's was good.

All the testimony preponderated in favor of appellant, hence the decree should have been in her favor.

The decree is reversed with directions to grant the decree as prayed.

Reversed.

CHAPMAN, C. J., concurs specially.

TERRELL and BUFORD, JJ., concur.

CHAPMAN, C. J., concurring.

The case of Prine v. Prine, 36 Fla. 676, 18 So. 781, was a suit in equity to annul a marriage entered into by one of the parties at a time when intoxicated from the excessive use of whiskey for a long period of time and thereby deprived of his power to reason—for all intents and purposes he was *non compos mentis* when the marriage ceremony was performed. We held that a marriage entered into under such conditions and circumstances was invalid. Likewise an invalid marriage entered into could at a subsequent date by acts and conduct be confirmed and ratified.

The mental capacity requisite to a valid marriage is a capacity to understand the nature of the contract and the duties and responsibilities it creates. One may be incapable of contracting marriage due to an excessive use of intoxicants and thereby be unable to concentrate his mind or to understand the obligations assumed, and, absent a showing of ratification, such a marriage may be annulled. Schouler on Marriage and Divorce, Vol. 2 (6th ed.) 1373-4, par. 1105; 35 Am. Jur. 237-246, pars. 89-104. To constitute a valid marriage the essentials to all contracts—capacity and consent—must be

present. 38 C. J. 1270, par. 9; 18 R. C. L. 407, par. 27; Pomeroy's Equity Jurisprudence, Vol. 3 (5th ed.) 765-8, par. 949.

It is my view that the learned Chancellor below misinterpreted the legal effect of the testimony appearing in the record. I therefore concur in the opinion and judgment as prepared by Mr. Justice ADAMS.