VANCE *et al. v.* HINCH.

5-153                                      261 S. W. 2d 412

Opinion delivered October 19, 1953.

*Cole & Epperson* and *W. H. McClellan,* for appellant.
*William C. Gilliam,* for appellee.

WARD, J. The principal issue involved in this appeal is correctly stated by appellants as follows: "Is a marriage of an insane person absolutely void and subject to collateral attack after the death of one of the parties, or is such a marriage voidable only and subject to attack only during the lifetime of both parties with all rights of action terminated at death?"

One Indiana Hinch, a negro woman, died intestate at the age of 94, leaving an estate of considerable value. Some time before her death [the record does not state how long] she entered into marriage with appellee, Harold Hinch.

This action was brought on the complaint of appellant, Kitty Vance, a daughter, and Perla Mae Mayberry and Lawrence Treadwell, grandchildren, and all direct heirs of the deceased. The pertinent allegations are that because of the mental condition of the deceased at the time of such marriage the said marriage is void, and that by reason of such marriage the defendant is claiming courtesy in the estate of the deceased to the damage of the plaintiffs. The prayer was to enjoin appellee from claiming courtesy in the estate of the deceased.

Appellee moved the court to dismiss the complaint on the ground that the said marriage, conceding for the purpose of the motion the deceased to be incompetent at the time of the marriage, was not void but merely voidable, and, therefore, cannot be attacked by the heirs of Indiana Hinch after her death. The trial court sustained appellee's motion on the ground just stated, and this appeal follows:

To reverse the decree of the trial court appellants make the contention, citing *Rose* v. *Rose*, 9 Ark. 507, that at common law a marriage, where either party lacked mental capacity, was absolutely void. Appellants correctly state that the Revised Statutes, Chapter 28, § 1, now Ark. Stats. 1-101, incorporates into our own body of law the common law of England insofar as the same is applicable and of a general nature and not inconsistent with the constitution and laws of the United States or

this state. The argument is that since such marriages were absolutely void at common law and since this state has adopted the common law such is still the law in this state unless it has been changed by statute.

Notwithstanding appellants' capable argument to the contrary it is our opinion that Ark. Stats. § 55-106 does abrogate the common law with reference to such marriages. The section reads as follows:

"When either of the parties to a marriage shall be incapable, from want of age or understanding, of consenting to any marriage, or shall be incapable from physical causes of entering into the marriage state, or where the consent of either party shall have been obtained by force or fraud, the marriage shall be void from the time its nullity shall be declared by a court of competent jurisdiction. (Revised Statutes, Chapter 94, § 5)".

Appellants correctly urge that the presumption is against repeals by implication and that implied repeals are not favored and will not be held to exist if there is any other reasonable construction, so, it is urged, that the language of the cited statute, "want of understanding," is not broad enough to include a person of unsound mind. We cannot agree with appellants' argument.

It is apparent that the question presented here is an important one and that grave inequities might result from either interpretation. If it is held that such a marriage is voidable only and cannot be attacked after the death of the allegedly incompetent party then a situation arises where fraud could easily be perpetrated. For example, a designing person could effect a marriage with a known imbecile a few days or hours before the latter's death and there would seem to be no way to prevent such a person from profiting unjustly by his designing acts. On the other hand if it is held that such a marriage is absolutely void and can be collaterally attacked even after the death of the alleged incompetent it would be possible for designing heirs to set aside the sacred vows of matrimony and deprive the surviving spouse of valua-

ble property to which he or she might otherwise be legally and morally entitled to receive.

To our minds the language in Ark. Stats. § 55-106 leaves little doubt that it was the legislative intent to change the common law as it was originally adopted and incorporated into the laws of this state. It must be noted that the very statute [Rev. Stat., Ch. 28, § 1—same as Ark. Stats. § 1-101] which adopted the common law for this state provides that it shall not apply where it is inconsistent with any law [statute] of this state. Again it must be noted that at the same time the legislature adopted by statute the common law it also passed another statute [now Ark. Stats. § 55-106, set out above] which, we hold, changed the common law relative to effect of marriages by incompetents.

The question then would seem to be not, as urged by appellant, whether § 55-106 repeals § 1-101 by implication, but rather what is the meaning of § 55-106. Does this section make such a marriage void or voidable? Notwithstanding the statute contains the word "void" it also says the marriage shall be void only from the time it is declared a nullity by a court of competent jurisdiction. The only reasonable interpretation then, it appears to us, is that such a marriage is voidable and not void. In construing the meaning of the word "void" in Ark. Stats. § 55-102 in connection with § 55-106 it was held to mean "voidable" in *Kibler* v. *Kibler,* 180 Ark. 1152, 24 S. W. 2d 867.

Notwithstanding the conclusion arrived at above it does not answer appellants' contention that the phrase "want of age or understanding" found in § 55-106 is not broad enough to include a person of unsound mind. If appellant is right then it would be logical to argue that the common law in the respect here mentioned has not been changed.

We think the language referred to above is plain and must be interpreted to include a person of unsound mind. We see no less reason for it to be so applied than to apply it to a person of tender age, or one who is under

the influence of drugs or liquors. In each case there would be a lack of understanding. In *Bickley* v. *Carter*, 190 Ark. 501, 79 S. W. 2d 436, the words "want of understanding" in § 55-106 were held to apply to one who was drunk.

Having arrived at the conclusion that the common law has been changed by statute as set out above, can appellants here successfully attack the marriage of the deceased after her death?

It is conceded by both sides that our court has never directly passed on the question herein involved and has never interpreted the last mentioned statute. However, said statute has been construed by the Supreme Court of Missouri in the case of *Henderson* v. *Ressor*, 265 Mo. 718, 178 S. W. 175. There the husband, alleged to have been insane at the time of the marriage, died leaving considerable property and his wife claimed her dowry rights. The collateral heirs of the deceased husband brought suit in equity to annul the marriage on the ground of mental incapacity. The marriage took place in this state and the laws of this state were applied by the Missouri Court. In commenting upon the Ark. Stats. 55-106, the court stated:

". . . that its meaning is fairly apparent, and that its intention is, to a marked degree, salutary likewise goes without saying. To our minds, it means that the courts, and not the individuals affected, must, in all cases, be allowed to sit in judgment upon the question of the existence of nonage, or mental incapacity, or impotence, or fraud, or duress to an extent which will furnish sufficient cause for annulment. Its effect is to render the marriage of persons under the age of consent, or marriage of the mentally incapable, as also marriages contracted by fraud or force, voidable only, and, being so voidable and not void, legally vulnerable to attacks made in the lifetime of the spouses only."

The Missouri opinion cited with approval from 2 Nelson on Divorce and Separation, § 569:

" 'A voidable marriage can only be inquired into by a direct proceeding between the parties and during the lives of both of them. Until it is set aside it is practically valid for all purposes, but when set aside the decree renders it void from the beginning'."

In accordance with the above the decree of the trial court is affirmed.