[Civ. No. 27291.   Second Dist., Div. Four.   Nov. 4, 1963.]

RUSSELL M. HUSTED, Plaintiff and Respondent, v. JEANNE E. HUSTED, Defendant and Appellant.

James H. Ackerman and Joe Ling for Defendant and Appellant.

Harold C. Frerks for Plaintiff and Respondent.

KINGSLEY, J.—On March 26, 1958, appellant was granted an interlocutory decree of divorce on her cross-complaint against respondent. The decree awarded her custody of the minor daughter of the parties, and directed the husband to pay to her $150 per month for child support and $200 per month as alimony. The final decree of divorce, carrying forward these same provisions, was duly entered on July 9, 1959. On May 22, 1962, appellant participated in Nevada in a ceremony of marriage with one Norwood. On June 18, 1962, appellant instituted, in California, an action for annulment of her marriage to Norwood, alleging insofar as the grounds of annulment were concerned, as follows:

"V

"At the time of said marriage, the consent of the plaintiff to said marriage ceremony was obtained by force, and that the parties have not cohabited each with the other, freely or otherwise, prior to or since said marriage ceremony.

"VI

"That at the time of the aforesaid marriage ceremony, plaintiff was of unsound mind in that she was under sedation and medication, the effect of which was such that she did not know the force and effect of the marriage ceremony, and that the parties have not cohabited each with the other, freely or otherwise, prior to or since said marriage ceremony." That action was tried as a default. A minute order, dated June 29, 1962, reads as follows: "Cause transferred from Dept 1 is called for trial as a default. Plaintiff is sworn and testifies. The court denies plaintiff's complaint for annulment. Denial is without prejudice to plaintiff's right to file a complaint for divorce." No formal judgment or decree was ever entered; however, the minute order has the effect of a judgment. (3 Witkin, Cal. Procedure, p. 2160.)

Thereafter, on September 10, 1962, appellant filed an action for annulment in a Nevada court. The complaint in that action alleged, as ground for relief, as follows:

"II

"That at the time the said purported marriage ceremony was performed, plaintiff was under sedation and medication, and by reason thereof she had no comprehension of what she was doing or of the nature or effect of said ceremony, and that by reason of said sedation and medication, she was then mentally incompetent to contract marriage; that by reason of said sedation and medication said plaintiff had such a want for [sic] understanding so that she was incapable of assenting to said marriage." A decree of annulment was granted the same day, the decree reciting the appearance of both plaintiff and Norwood by their respective counsel. The court expressly found "that all of the allegations of the complaint are true"; and, as a conclusion of law "that the plaintiff is entitled to an annulment of the marriage upon the ground as set forth in said complaint."

On May 28, 1962, without reference to her Nevada marriage,[1] appellant instituted a proceeding for the modification of the divorce decree so as to increase the allowance for child support. On June 8, 1962, respondent instituted a modification proceeding, asking (1) that alimony be terminated on the ground of changed financial conditions, and (2) that custody of the child be granted to him or, alternatively, that his rights of visitation be spelled out with particularity. On

[1] As we point out below, appellant testified that she had no knowledge of the Nevada marriage until after the filing of this application.

August 21, 1962, respondent instituted a second modification proceeding asking (1) that alimony be terminated on the ground of changed financial conditions, and (2) that it be terminated, and appellant ordered to return all payments made after the date of her Nevada marriage, on the ground of that marriage.

After several continuances, all three modification proceedings came on for hearing as a single matter, on October 29, 1962. The file in the California annulment action was introduced by reference, along with copies of the complaint and decree in the Nevada action. Appellant testified as to the circumstances surrounding the Nevada marriage and both parties offered evidence relating to the issues raised by the first two modification proceedings. Insofar as the Nevada marriage was concerned, appellant's testimony was to the effect that she had agreed to be driven by Norwood from Los Angeles to the home of Norwood's parents, in Walnut Creek, California, in order to recuperate from an operation; that she was under medication and sedation to such an extent that she remembers nothing about the trip until after her arrival in Walnut Creek, and that she had no knowledge of the marriage until Norwood told her of it in mid-June. After submission, on November 26, 1962, the court, by minute order (1) denied appellant's request for increase in child support, and (2) granted respondent's request for termination of alimony, as of the date of the Nevada marriage, and ordered appellant to repay alimony received by her after that date. No order was made on the request to modify the custody order.

Appellant appealed from the order of November 26, 1962. However, she urges error only as to the part of the order relating to alimony. We therefore confine our consideration to that issue, deeming the matter of the increase in child support to be waived. (3 Witkin, Cal. Procedure, p. 2332.)

The status of appellant's second marriage is to be determined by the law of the place of the ceremony (Rest., Conflict of Laws, § 115, and comment to that section); but the effect of such a second marriage on alimony awarded by a California decree is determined by the law of this state. (*Sutton* v. *Leib* (1952) 342 U.S. 402 [72 S.Ct. 398, 96 L.Ed. 448].)

*Sefton* v. *Sefton* (1955) 45 Cal.2d 872 [291 P.2d 439], held that, under section 139 of the Civil Code, a void-

able marriage terminated the right to alimony and that such right did not rearise on the annulment of such a marriage. However, it is clear from the language of that opinion that a *void* marriage would not have a like effect. In the only case we have found dealing with the effect of a void marriage on the right of alimony, the court held that (except possibly for the period between the date of such void marriage and its judicial termination) the right to alimony from a previous marriage was unaffected. (*Sutton* v. *Leib* (1952) 199 F.2d 163 [33 A.L.R.2d 1451] ; 21 So. Cal.L.Rev. 367.)

It, thus, becomes necessary for us to determine whether appellant's marriage to Norwood was void or voidable. Since appellant has given three versions of that episode, we must consider each version and consider, also, the effect on this proceeding of the divergent judicial reaction to the earlier two of these three versions.

▇ (1) The allegations of her California annulment proceeding claimed only a voidable, and not a void, status. Under California law, a marriage based on "force" under subdivision 5 of section 82 of the Civil Code is voidable and not void. (*Linebaugh* v. *Linebaugh* (1902) 137 Cal. 26 [69 P. 616].) Although no Nevada cases on the point have been found, we see no reason to assume that the law of that state differs (see 33 So.Cal.L.Rev. 1, 10, and cases there cited). ▇ Similarly, a marriage open to attack for "unsound mind" is voidable under our law. (*Estate of Gregorson* (1911) 160 Cal. 21 [116 P. 60, Ann.Cas. 1912D 1124, L.R.A. 1916C 697] ; *Dunphy* v. *Dunphy* (1911) 161 Cal. 87 [118 P. 445].) Again no Nevada cases have been found discussing this problem. In *McNee* v. *McNee* (1925) 49 Nev. 90 [237 P. 534], the court considered only the question of proof. But the Nevada statute declares such a marriage to be void "from the time it is so decreed" and the uniform construction of such statutory language in other states has been to the effect that it rendered the marriage only voidable and not void. (Consult: *Hastings* v. *Douglass* (1918) 249 F. 378; *Vance* v. *Hinch* (1953) 222 Ark. 494 [261 S.W.2d 412] ; *Mackey* v. *Peters* (1903) 22 App.D.C. 341; *Henderson* v. *Ressor* (1915) 265 Mo. 718 [178 S.W. 175] ; *Sturgis* v. *Sturgis* (1908) 51 Ore. 10 [93 P. 696, 15 L.R.A.N.S. 1034] ; *Dibble* v. *Meyer* (1955) 203 Ore. 541 [278 P.2d 901, 280 P.2d 765] ; *Cornwall* v. *Cornwall* (1933) 160 Va. 183 [168 S.E. 439].) We conclude, therefore, that Nevada, like California, would regard the marriage described in the California annulment complaint as voidable only.

■ (2) The effect of the allegations of the Nevada complaint are less clear. In a single paragraph, appellant seems to have set forth three different contentions. Two of these ("she was then mentally incompetent") and ("plaintiff had such a want of understanding") amount to the same thing as the allegation in paragraph VI of the complaint in the California action, which we have previously discussed. But she also alleged that "she had no comprehension of what she was doing or of the nature or effect of said ceremony." If this means that, by reason of the medication and sedation, appellant did not realize that she was participating in a ceremony of marriage, the authorities (although again none in Nevada) are uniform to the effect that the purported marriage was totally void. (Consult: *Hamlet* v. *Hamlet* (1941) 242 Ala. 70 [4 So. 2d 901]; *Baxter* v. *Rogers* (1943) 195 Ga. 274 [24 S.E.2d 52]; *Martin* v. *Martin* (1946) 157 Fla. 835 [26 So.2d 901]; *Montgomery* v. *U'Nertle* (1923) 143 Md. 200 [122 A. 357]; *Gillett* v. *Gillett* (1889) 78 Mich. 184 [43 N.W. 1101]; *Sloan* v. *Kane & Grant* (N.Y. 1854) 10 How. Prac. 66; *Elzey* v. *Elzey* (Del. 1857) 1 Houst. 308; *Prine* v. *Prine* (1895) 36 Fla. 676 [18 So. 781, 34 L.R.A. 87]; *Barber* v. *People* (1903) 203 Ill. 543 [68 N.E. 93]; *Waughop* v. *Waughop* (1914) 82 Wash. 69 [143 P. 444].) However, if this allegation means only that the medication had rendered her incapable of understanding the nature of marriage, she alleges only a special form of temporary unsoundness of mind and the marriage would be voidable only. (*Hines* v. *Hines* (1943) 244 Ala. 432 [14 So.2d 146]; *Dunphy* v. *Dunphy* (1911) *supra,* 161 Cal. 87 [118 P. 445]; *Dobson* v. *Dobson* (1948) 86 Cal.App.2d 13 [193 P.2d 794]; *Elzey* v. *Elzey* (Del. 1857) 1 Houst. 308; *Prine* v. *Prine* (1895) 36 Fla. 676 [18 So. 781, 34 L.R.A. 87]; *Mahan* v. *Mahan* (Fla. 1956) 88 So.2d 545 [57 A.L.R.2d 1246]; *Montgomery* v. *U'Nertle* (1923) 143 Md. 200 [122 A. 357]; *Selah* v. *Selah* (1872) 23 N.J.Eq. 185; *Clement* v. *Mattison* (1846) 37 S.C.L. (3 Rich.) 93; *Christoph* v. *Sims* (Tex.Civ.App. 1950) 234 S.W.2d 901; *Anderson* v. *Hicks* (1912) 150 App.Div. 289 [134 N.Y.S. 1018, 3 Civ. Proc. Rep. N.S. 306]; *McCleary* v. *Barcalow* (1891) 6 Ohio C.C. 481 [3 O.D.C. 547]; *Imhoff* v. *Witner's Admr.* (1858) 31 Pa.St. 243; 8 Minn.L.Rev. 169; 34 L.R.A. 87.)

It is clear from all the cases above cited that the policy of the law is to construe allegations in favor of a claim of voidability rather than of voidness. If appellant intended to allege a total lack of comprehension she could and should have al-

leged that fact with greater particularity. We conclude that, like the California complaint, the Nevada action alleged only a voidable marriage.

(3)   However, under the authorities above cited, it is also clear that the ''marriage'' to which appellant testified in the present proceeding was totally void. If her present story is to be believed, she had no knowledge that she was in Nevada, no knowledge that she was executing an application for a marriage license, and no knowledge that she was a participant in a marriage ceremony.

(4)   It is obvious that the record suggests several problems in the fields of res judicata, collateral estoppel and of full faith and credit. We need not decide them, however. ■   ''A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged in to support it on matters as to which the record is silent, and error must be affirmatively shown.'' (3 Witkin, Cal. Procedure, p. 2238.) And see *Stewart* v. *Langer* (1935) 9 Cal.App. 2d 60 [48 P.2d 758] ; *Mastrofini* v. *Swanson* (1952) 114 Cal. App.2d Supp. 848 [250 P.2d 764]. Thus, in the present case, we must assume that the trial court did not believe the uncorroborated version testified to by appellant. Even if we were to give to the Nevada decree full faith and credit not only as to its result in terminating the relation between appellant and Norwood but also as to its fact findings in support of that result (cf. *Sutton* v. *Leib, supra* (1952) 342 U.S. 402 [72 S.Ct. 398, 96 L.Ed. 448] ; but cf. *Linneman* v. *Linneman* (1953) 1 Ill. App.2d 48 [116 N.E.2d 182]), we would, as we have seen, be faced only with a voidable marriage. And even if we regard the collateral estoppel which normally would flow from appellant's failure to secure an annulment in the California action (see *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807 [122 P.2d 892]) as being removed by the Nevada decree, or as not barring her from now asserting a different ground of annulment, the trial court in this proceeding was amply justified in not believing her current version of the facts surrounding the Nevada ceremony. ■   While it was said in *Dobson* v. *Dobson, supra* (1948) 86 Cal.App.2d 13, 14, that ''Testimony which is not inherently improbable and is not impeached or contradicted by other evidence must be accepted as true by the trier of fact,'' we have here a case in which, not only is the story as now presented of doubtful probability, since it requires us to assume that a public official issued a license to an unconscious woman and that a

celebrant performed a marriage ceremony to a woman in that condition, but appellant's story is contradicted by her own versions of the events as sworn to by her in two verified complaints.

Having failed to satisfy the trial court that she was, in fact, the victim of a void marriage, appellant's rights to alimony fell with her admitted second marriage, whether that marriage be regarded as valid or as voidable.

The order appealed from is affirmed.

Burke, P. J., and Jefferson, J., concurred.