[Civ. No. B002218. Second Dist., Div. Five. Apr. 25, 1985.]

In re the Marriage of CAROLE SUE and
ALVIN ABRAHAM WEINTRAUB.
ALVIN ABRAHAM WEINTRAUB, Respondent, v.
CAROLE SUE WEINTRAUB, Appellant.

COUNSEL

Klass, Helman & Ross and Robert M. Ross for Appellant.

Marvin Gross and Susan B. Oman for Respondent.

OPINION

ASHBY, J.—Appellant Carole Sue Green Weintraub (hereinafter Wife) appeals from an order dismissing her petition against respondent Alvin Wein-

traub (hereinafter Husband) for reinstatement of spousal support. The trial court did not weigh the evidence but held that even assuming all of Wife's allegations were true, the court would have no authority to reinstate spousal support. We conclude that under the unusual circumstances alleged in this case the court would have such authority, therefore we reverse for further proceedings in the trial court.

The parties were married in 1953 and separated in 1977. An interlocutory judgment of dissolution of marriage was entered in 1978 requiring Husband to pay spousal support to Wife.[1] After several modifications Husband was ordered to pay Wife $750 per month in spousal support, effective commencing February 1, 1980, which order was still in effect in December 1981.

On December 17, 1981, Wife was abducted by one Michael Hahn (hereinafter Hahn) by force, physical beatings, and threat of physical harm and taken to Arizona, where, on December 20, 1981, against her will and as the result of coercion, physical beatings, intimidation and threats upon the safety of her family, Wife went through a marriage ceremony with Hahn. Wife and Hahn returned to her residence in California where for two months she was "virtually held captive" by Hahn. On February 22, 1982, she managed to leave her residence, contact an attorney and obtain restraining orders removing Hahn from the home. Through her attorney, she obtained, on March 16, 1982, a judgment in Los Angeles Superior Court annulling her marriage to Hahn on the ground the marriage was obtained by force (Civ. Code, § 4425, subd. (e)).[2] No criminal charges were filed against Hahn despite police reports made by Wife.[3]

Meanwhile, however, commencing January 1, 1982, Husband ceased making his support payments, contending that his duty of spousal support was terminated by Wife's remarriage, pursuant to Civil Code section 4801, subdivision (b).[4]

---

[1]The facts are taken from Wife's declaration in support of her petition and from the parties' settled statement of facts.

[2]Civil Code section 4425 provides in pertinent part: "A marriage is voidable and may be adjudged a nullity if any of the following conditions existed at the time of the marriage: . . . [¶] (e) The consent of either party was obtained by force, unless such party afterwards freely cohabited with the other as husband or wife."

[3]According to Wife's trial brief, Hahn has left the jurisdiction and is the subject of FBI investigation.

[4]Civil Code section 4801, subdivision (b), provides: "Except as otherwise agreed by the parties in writing, the obligation of any party under any order or judgment for the support and maintenance of the other party shall terminate upon the death of either party or the remarriage of the other party."

On December 15, 1982, Wife petitioned the trial court for an order reinstating spousal support, contending that she had committed no voluntary act which would terminate her support rights. The trial court refused to entertain Wife's petition, holding that Husband's duty to pay spousal support was terminated by Wife's remarriage and that the court would have no authority to reinstate support. The court apparently relied upon a line of cases holding that the subsequent annulment of a voidable remarriage does not reinstate a prior spouse's duty of paying spousal support.

We agree with Wife that these authorities are not controlling because they do not involve a remarriage obtained by force. Their reasoning presupposes a voluntary decision by the wife to remarry, to forego spousal support from the prior husband and to rely instead on support from the new husband. This case is unique in that the remarriage allegedly occurred wholly by force. If Wife can prove these allegations, there are circumstances under which the court could reinstate spousal support, and therefore the matter will be reversed for further proceedings.

## DISCUSSION

There are only a few California cases involving whether the annulment of a subsequent remarriage can revive the obligation of a prior spouse to pay spousal support. With one exception they do not discuss a remarriage obtained by force, and they are distinguishable from the present case because each involved a voluntary decision by the supported spouse to remarry. Nothing in these cases compels the conclusion that spousal support could not be reinstated after an annulment of a remarriage obtained by force.

The leading California case is *Sefton* v. *Sefton* (1955) 45 Cal.2d 872 [291 P.2d 439]. One week after her remarriage, the wife obtained an annulment on the ground that the remarriage was induced by fraud. (See Civ. Code, § 4425, subd. (d).) She sought to enforce alimony from her previous husband although their property settlement agreement, like former Civil Code section 139 (now Civ. Code, § 4801, subd. (b)), provided that support would terminate on remarriage. She argued that because her remarriage had been annulled it should be considered erased and the annulment to "relate back" so that, in effect, she never remarried and never lost her entitlement to alimony. (*Sefton* v. *Sefton, supra,* 45 Cal.2d at pp. 874-875.)

The Supreme Court rejected the wife's abstract theoretical approach. The court said the doctrine of relation back was a mere legal fiction and that the proper purpose of inquiry was to do substantial justice between the parties and to conform to sound policy. (*Id.,* at p. 875.) The court held that the rights of the first husband must also be considered and that in the circum-

stances of that particular case it would not be fair to reinstate his prior obligation to pay spousal support. Because it is a Supreme Court opinion and the leading California case, we quote the court's reasoning in full: *"By the celebration of marriage she held herself out as having remarried. The defendant was entitled to rely upon her apparent marital status after the ceremony. If Mrs. Sefton's new marriage was subject to annulment for fraud as provided for in subdivision four of section 82 of the Civil Code, or for the incapacity of her new husband to enter upon the marriage state as provided for in subdivision six, or for any reason stated in subdivisions one, three and five of that section, the marriage would be voidable only. Redress by way of annulment might never be sought by the offended party and the marital status might thus continue indefinitely. The causes for annulment thus provided by statute are ordinarily known to or concern only the individual contracting parties. The divorced spouse, the defendant here, may never know of the circumstances which make his former wife's new marriage voidable. Certainly knowledge of such voidability may not be imputed to him. After the ceremony took place he could properly assume, in accordance with section 139 and the property settlement agreement, that his obligation to pay alimony had ceased. He was then entitled to recommit his assets previously chargeable to alimony to other purposes. Under such circumstances, it would be improper to reinstate his alimony obligation. While it is true that both the plaintiff and defendant may be deemed to be innocent parties, it accords with the policy of the law to look less favorably upon the more active of the two innocent parties when by reason of such activity a loss is sustained as the result of the misconduct of a stranger. Here it is clear that Mrs. Sefton was the active party who brought herself and the defendant into their present situation. Accordingly, it is she who should assume the responsibility for it."* (45 Cal.2d at pp. 876-877, italics added.)

Thus at both the beginning and the conclusion of its statement, the Supreme Court emphasized that the wife voluntarily remarried and that even if she had been innocently duped into remarriage, she "was the active party who brought herself and the defendant into their present situation. Accordingly, it is she who should assume the responsibility for it." It was in that context that the court presumed reliance by the first husband rather than treating reliance as a question of fact to be proved in the individual case. (*Id.,* at p. 876. See *id.,* at p. 881 (dis. opn.); *Beckett* v. *Beckett* (1969) 272 Cal.App.2d 70, 73 [77 Cal.Rptr. 134].) A commentator has noted, "Since (as the dissent pointed out) the court did not require proof of actual reliance, this seems to be a form of 'quasi-estoppel.'" (Note (1956) 44 Cal.L.Rev. 788, 790, fn. 12.)

Similar reasoning was expressed in *Berkely* v. *Berkely* (1969) 269 Cal.App.2d 872, 874-875 [75 Cal.Rptr. 294]. In *Berkely* the remarriage

was bigamous and "void" rather than "voidable." (Compare Civ. Code, § 4401 with Civ. Code, § 4425.) The wife argued that *Sefton* was not controlling because *Sefton* involved a voidable marriage, and that a stronger case could be made for the relation back theory in the case of a void marriage. The *Berkely* court also rejected a doctrinaire approach and looked instead to the policies mentioned in *Sefton*. Agreeing with cases from other jurisdictions which reject the notion that the result should depend upon whether the remarriage was statutorily "void" or "voidable," the *Berkely* court concluded: "These courts have treated a divorcee as a responsible person who must be held to her decision, presumably relied upon by others, to terminate her right to support from a former husband." (*Berkely* v. *Berkely, supra,* at p. 875.) *Berkely* was followed on similar facts in *Fry* v. *Fry* (1970) 5 Cal.App.3d 169, 171-172 [85 Cal.Rptr. 126].

These California cases do not hold that there are no circumstances under which spousal support could be reinstated following the annulment of a remarriage. They eschew a theoretical or absolutist approach, but rather weigh the equities and policies involved, and conclude that since ordinarily the remarrying spouse has voluntarily chosen to remarry and to rely on the second husband for support, the first husband is freed from responsibility. Nothing in these cases appears to contemplate the unusual circumstances alleged in this case where the remarrying spouse was not active or responsible for the remarriage.[5]

The trial court may have felt bound by *Husted* v. *Husted* (1963) 222 Cal.App.2d 50 [35 Cal.Rptr. 698], which was cited by Husband's trial brief. As an appellate court, however, we conclude that *Husted* does not compel dismissal of Wife's petition; in fact, it supports the distinction we have drawn. The wife in that case had been given a hearing by the trial court on her request that spousal support be reinstated. (*Id.,* at p. 53.) By her testimony she attempted to prove that at the time of the remarriage ceremony she was recuperating from an operation and was under such heavy sedation that she remembered nothing about her trip to the marriage ceremony, had no knowledge she was participating in a marriage ceremony, and

---

[5]Numerous authorities are collected in an annotation, (1972) 45 A.L.R.3d 1033. We have not been directed to any case from another jurisdiction involving a remarriage obtained by force. In *Bridges* v. *Bridges* (Miss. 1968) 217 So.2d 281, the wife obtained an annulment because the remarriage was induced by fraudulent misrepresentations. In ruling against the wife's claim for spousal support from her first husband, the court commented: "Appellant was mentally competent when she undertook to marry Ferrell. She was under no compulsion, except the misrepresentations already mentioned. When she undertook to enter into this marriage she made an election to look to Ferrell as the man from whom she would receive her support, and relinquished her right to receive further alimony from Bridges. If she had been forced to marry Ferrell under duress that made her act wholly involuntary or if she had been mentally incompetent to enter into a contract of marriage, we would have a different kind of case, and undoubtedly would reach a different result." (P. 284.)

did not learn of the marriage until after it had occurred. (*Id.*, at pp. 53, 55, 56.) Her testimony had been disbelieved by the trial court. The appellate court affirmed, on the basis of the substantial evidence rule, the trial court's order terminating support rights from the prior husband. (*Id.*, at pp. 56-57.)

The appellate court apparently assumed that the result would depend upon whether the remarriage was "void" or "voidable" (*Husted v. Husted, supra,* 222 Cal.App.2d at p. 53), the assumption subsequently disapproved in *Berkely v. Berkely, supra,* 269 Cal.App.2d at pages 873-874 (criticizing *Husted*). In that context the *Husted* court mentioned that a marriage based on force is voidable rather than void. (222 Cal.App.2d at p. 54.) But the court's inquiry did not end with that statement. The court's holding was based upon the trial court's resolution of the credibility of the wife's testimony. The opinion implies that if the wife had successfully proved that she had no knowledge she was participating in a marriage ceremony, the court would have found her entitled to relief. Such a result would have been consistent with our conclusion that if by reason of force the wife was not an active party within the meaning of *Sefton*, reinstatement of spousal support would not necessarily be foreclosed.

For the guidance of the trial court, we suggest the following procedure on remand.

■ First, the judgment of annulment between Wife and Hahn is not binding on Husband, who was not a party to it. (Civ. Code, § 4451; *Sefton v. Sefton, supra,* 45 Cal.2d at p. 876; *Estate of Gosnell* (1944) 63 Cal.App.2d 38, 41 [146 P.2d 427; *Price v. Price* (1938) 24 Cal.App.2d 462, 467 [75 P.2d 655].) Wife will have to establish by evidence and bear the burden of proof that her remarriage was not voluntary.

■ The threshold requirement for Wife to establish is that her conduct was wholly involuntary so that it may be concluded she was not an active party within the meaning of *Sefton*. (45 Cal.2d at p. 877.) If her evidence fails to persuade the trial court that the remarriage was induced by force and that she was not an "active party who brought herself and [Husband] into their present situation," then the trial court need go no further. Her petition for reinstatement of support should be denied.

If Wife overcomes this threshold requirement, the determination whether to reinstate spousal support should be based on equity, the goal being to achieve substantial justice providing adequate protection for both Husband and Wife. (See *Sefton v. Sefton, supra,* 45 Cal.2d at pp. 875-877; (1956) 29 So.Cal.L.Rev. 367, 368; 44 Cal.L.Rev., *supra,* at p. 790; *Peters v.*

*Peters* (Iowa 1974) 214 N.W.2d 151, 156-157.) Numerous factors may enter into consideration. Has Wife acted promptly to annul the remarriage and to notify Husband of her intent to seek reinstatement of support? Excessive delay in seeking annulment may imply that she has ratified the remarriage by voluntarily cohabiting (Civ. Code, § 4425, subd. (e)) or that she is attempting to reserve to herself an election between two husbands for support. (See Civ. Code, § 4426, subd. (e).) Another important factor is whether Husband has reasonably relied to his detriment upon Wife's apparent remarriage. (*Sefton* v. *Sefton, supra,* 45 Cal.2d at p. 876.) We need not anticipate all the possible considerations that could arise. It is sufficient to reiterate that once Wife overcomes the threshold requirement of establishing that the remarriage was not due to any voluntary act on her part, the rights of the parties shall be determined by equity.

The order is reversed and the cause is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

Feinerman, P. J., and Eagleson, J., concurred.