## SUTTON v. LEIB.

### No. 10294.

United States Court of Appeals
Seventh Circuit.

Oct. 15, 1952.

Rehearing Denied Oct. 31, 1952.

Howard R. Blalock, Springfield, Ill., Joseph R. Carson, Jean S. Carson, John Alan Appleman, Urbana, Ill., for appellant.

A. M. Fitzgerald, Walter T. Day, Springfield, Ill., for appellee.

Before KERNER, FINNEGAN, and SWAIM, Circuit Judges.

KERNER, Circuit Judge.

This appeal is before us for a second time, having been remanded by the Supreme Court with a direction to reconsider it in the light of the Illinois law applicable to the issue as there determined. 342 U.S. 402, 72 S.Ct. 398. That issue is, does Il-

linois law give the marriage ceremony of a Nevada marriage, annulled by a New York court having jurisdiction of the parties for bigamy of the husband, sufficient vitality to release defendant, a former husband, from the obligation to pay alimony imposed by an Illinois decree.

We again repeat the facts which gave rise to this controversy. Plaintiff obtained a decree of divorce from defendant in 1939 in an Illinois court. The decree required the payment of $125 alimony monthly "for so long as the plaintiff shall remain unmarried, or for so long as this decree remains in full force and effect * * *." On July 3, 1944, plaintiff married Walter Henzel in Reno, Nevada. Henzel had on that day obtained a Nevada decree of divorce from Dorothy Henzel, a New York resident who was served only by publication and did not appear. Plaintiff and Henzel returned to New York immediately after the divorce and remarriage. One month later, on August 3, 1944, Dorothy started a separate maintenance proceeding in New York which resulted in a decree in her favor, declaring Henzel's Nevada divorce from her null and void. Plaintiff, who had ceased living with Henzel upon service of Dorothy's process upon him, filed suit in New York in January 1945 for annulment of their Nevada marriage, and an interlocutory decree was entered in June 1947 which became final three months later, declaring the marriage null and void because Henzel had another wife living at the time it was performed. Plaintiff was married for a third time in November 1947. Her present suit against her first husband is for the 40 instalments of alimony which she asserts accrued between the first of the month following her second marriage and the first of the month following her third marriage. In her complaint she also asked for interest on each instalment from the date it became due, and costs, but made no claim for attorney's fees or legal expenses.

The Supreme Court tells us that the marriage ceremony performed for plaintiff and Henzel in Nevada must be held invalid because Henzel then had a living wife, as declared by the New York court, and Nevada declares bigamous marriages void.

However, it further tells us that giving full faith and credit to the New York adjudication does not settle the problem here raised since it is for Illinois to decide for itself the effect of that adjudication on the obligations of defendant, a stranger to that decree. It points out the possibilities for variation in the effects flowing from the annulment decree, referring, for example, to the New York case, Sleicher v. Sleicher, 251 N. Y. 366, 167 N.E. 501, under which it states that plaintiff would apparently recover alimony after annulment but not for the period between the remarriage ceremony and the annulment. But we note that this case involved the problem as applied to a voidable marriage, and was based on the theory that the wife, legally entitled to the support of her second husband until their marriage was actually annulled, was not entitled to double support, hence the first husband was obligated to resume the payment of alimony only after the annulment decree. A later New York decision, Landsman v. Landsman, 302 N.Y. 45, 96 N.E.2d 81, declared that a void marriage creates neither right nor duty and imposes no legal obligations. The result in that case was that a husband owed no duty of support during or after the proceedings for annulment.

Applying the Landsman rule to the facts here, Henzel at no time owed plaintiff any duty of support—it appears from her affidavit of record here that her motion in the annulment proceeding for alimony *pendente lite* was denied on the ground that her marriage to Henzel was void *ab initio*. Hence the rule adopted in the Sleicher case has no application to the facts here—we think there can be no double support when there is no legal obligation of support, and the temporary interlude when plaintiff was receiving some gratuitous support from another man who was under no legal duty to support her does not of itself prevent her from recovering the alimony provided by the divorce decree. This is in accord with Illinois decisions which have consistently held that a void marriage, as distinguished from a voidable one, is an absolute nullity for all purposes, and no judicial proceedings or decree are required to establish its invalidity. People

v. Shaw, 259 Ill. 544, 102 N.E. 1031, L.R.A. 1915E, 87; Cartwright v. McGown, 121 Ill. 388, 12 N.E. 737; Jardine v. Jardine, 291 Ill.App. 152, 9 N.E.2d 645. It follows that such a void marriage would be ineffectual to alter the marital status of either party to it, and that one who participated in it, if otherwise unmarried, would "remain unmarried." We find no escape from this conclusion in the holding of the Illinois court in Lehmann v. Lehmann, 225 Ill.App. 513, also referred to by the Supreme Court, since that case, like the Sleicher case, involved a voidable rather than a void marriage. Once it is established, as the Supreme Court established in this case, that the marriage was void from its inception in Nevada where it was performed, because Nevada declares bigamous marriages void, then it seems simple to apply the Illinois law, that a void marriage is a nullity which creates no rights and duties between the parties and effects no change in the marital status of either. That being true, it cannot be relied upon by a third party, as defendant here, to relieve him of a continuing obligation which was never interrupted by the inefficacious marriage ceremony in Nevada.

■■ In addition to the $5000 due for the 40 instalments of alimony, plaintiff also asked for interest thereon and now claims legal expenses and counsel fees. She relies on several Illinois decisions to the effect that a decree directing the payment of alimony is a money judgment which, if unpaid, draws interest from the date each instalment is due, and if payment is resisted, the divorced wife is entitled to recover counsel fees and all expenses of the suit to enforce. See, for example, Wadler v. Wadler, 325 Ill.App. 83, 59 N.E.2d 505, for a very good discussion of the Illinois cases on the subject. That is undoubtedly true in most cases, when resistance is wilful and deliberate, and no sound reason exists for refusal to pay. But we see no reason for applying such a rule under the facts of this case where defendant had every reason to believe that his obligation had come to an end under the terms of the decree which imposed it. He was fortified in this belief by the correspondence of plaintiff's attorney who wrote that her alimony claim had been satisfied in full, and by the decision of the trial court and this court and perhaps even by that of the Supreme Court which did not decide that the alimony was due as claimed by plaintiff, but only that the two lower courts were in error as to the theory on which they based the nonliability of defendant. And so far as this record shows, there was never any demand for instalments accruing between August 1944 and December 1947 until the filing of the suit in April 1950. Under these circumstances we think it would be very inequitable to charge defendant with interest and counsel fees.

Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.