Sidney H. Asch, J.
Every marriage creates a menage a trois — the three members of the household are the husband, the wife and the law. Plaintiff in this action seeks to recover support from her former husband. The latter’s motion is for partial summary judgment and incidental relief. It presents the precise question of whether the former husband’s obligation under a separation agreement to support plaintiff survives her subsequent marriage ceremony which is void because the new groom did not sleep clean, he was already wed to another.
The parties to this action were married in New York in 1939. On March 13, 1954, they entered into a ‘‘ mutually advan *922 tagepus ” separation agreement by which they agreed that the wife was to receive a stipulated weekly amount ‘ until her death or remarriage.” It was also provided that the agreement was to be construed and interpreted according to the laws of the State of New York.
They were divorced on March 16, 1954, and on November 19, 1962, the plaintiff participated in a ceremony of marriage with one Franklyn Reed in the State of Georgia. It is undisputed that from November 19, 1962 until March 7, 1964, for 68 weeks, defendant paid plaintiff $125 per week as alimony, not knowing the details of her remarriage. At some point, plaintiff learned that Reed had been still married at the time that he went through the ceremony by which he purported to marry her. He actually did not obtain a divorce from his then wife until December 4, 1962.
The position of plaintiff seeking resumption of alimony is simple and clear. She argues that her purported marriage to Reed was void ab initio and that as a consequence .she cannot obtain support from him. However, she contends, since her attempt to remarry was not successful, she is entitled to receive support again under the separation agreement with defendant.
Plaintiff instructs the court that the validity of a marriage is determined by the laws of the State where it occurred (Brown v. Brown, 306 N. Y. 788). Under section 53-102 of the laws of Georgia, the marriage of plaintiff to Franklyn Reed in Georgia was void ab initio. That gentleman, at the time of the marriage ceremony in November, 1962, was under a disability and unable to contract a valid marriage. According to the governing Georgia law, plaintiff cannot look to him for her support since, as stated in Lockhart v. Lockhart (211 Ga. 482): “ The right to recover alimony depends upon a valid subsisting marriage between the applicant and the man out of whose estate the allowance of alimony is claimed.” Georgia has no statutory analogue to section 236 of the New York State Domestic Relations Law. (Formerly Civ. Prae. Act, § 1140-a.) This section provides that a former wife may obtain support, under certain circumstances, even if the marriage is annulled.
For the purposes of deciding the issue before this court, it seems legally irrelevant to decide whether plaintiff could or could not recover alimony from the man with whom she participated in a void ceremonial marriage in Georgia. Referring to a somewhat similar problem, the opinion in Denberg v. Frischman (24 A D 2d 100, 103, affd. 17 N Y 2d 778) observed that “ The decision in the Gaines case of necessity included the premise that it was immaterial whether Connecticut had the *923 statutory equivalent to section 1140-a — just as in the present case.”
The critical problem is whether the plaintiff can revive the right to support which she enjoyed under the separation agreement with defendant, since her second marriage was void ab mitio. In the opinion of this court, such a result would offend the “ sense of injustice ”, borrowing the phrase invented by that great jurisprude, Edmund Cahn. Plaintiff in this action continued to accept alimony from defendant long after she went through a marriage ceremony with another. Plaintiff cannot deny that when she contemplated a new connubial arrangement, by her own volition she intended to abrogate her right to support under the agreement — for better or for worse. It must have been her understanding that the former husband, upon her remarriage, would be free of his obligation to support her. ‘It is certainly unlikely that the parties intended the result to turn upon whether an unsuccessful marriage is deemed in law void— as the one in this case ” (Gaines v. Jacobsen, 308 N. Y. 218, 223-224).
“ To riddle the Gaines rule with exceptions to avoid a particular result in a particular case may produce a host of injustices in the cases to follow.” (Denberg v. Frischman, supra, p. 106.)
This conclusion does not denigrate the importance of protecting impecunious women, a social policy which the law has persistently sought to advance. But it does not enhance the position of a woman in our society to insist that she remain a chrysalis in a cocoon. She is entitled to recognition as a responsible person, capable of making mature choices affecting her personal and property interests. She is entitled to try her wings — to make her own mistakes.
In the feudal society, from which so many of our legal notions and prejudices stem, the woman was quite dependent upon her liege lord, who thought and acted for her as he conceived her best interest to lie. Man slowly and painfully emancipated himself from the shackles of feudalism, going from “ status to contract.” Today, an impersonal, technological complex threatens to crush man’s individuality — -his freedom to contract. Woman has not yet even achieved her full right to self determination. In the centuries which followed feudalism, the woman managed the home, cared for the children, prepared or at least supervised the meals, administered the finances of the household, but she was not considered capable of making judgments about her life.
*924 As the agrarian feudal world yielded to the commercial revolution, then to the industrial revolution, and today, to the scientific one, what factual basis existed for the continuing subservience of women lost all its validity. But cultural lags are often perpetuated by lags in legal doctrine. Decisions predicated upon the supposed invalidity of the female to think and act for herself yield slowly. This has been especially true in the law of marriage and support.
In America, women are closer to reaching the dream of Mary Wollistonecroft ’s“ Vindication of the Rights of Women. ’ ’ They have to a considerable extent succeeded in the fight for suffrage, for a “ single standard ” in sex, for a freedom in manners and dress, for something like equality in job opportunity. It has been shown that women control three quarters of the wealth of of the country and its purchasing power, that they have most of the savings bank accounts, that they are the beneficiaries of most of the insurance policies, that they own half of the homes and stock of the large corporations in America. Women live longer than men and are more numerous.
In spite of their advances, women represent a deprived majority. Under the pretext of being solicitous over her well-being, the law has so swaddled women that they have never fully realized their potential as people. They are still not free agents. The world of women is still inchoate, not yet vested. In the word of Simone de Beauvoir, it is still “ immanent.” It must be recalled that it was only in the last century that women were permitted to own land in their own names and enter into contracts in their own capacities. It is comparatively recently that the courts have given some recognition to the attempt by woman to work out her own destiny and stand on her own feet. As a correlative of the growth in the rights of woman there must be a growth in her responsibilities. By granting defendant’s motion for partial summary judgment, the enlightened rationale of Judge Fuld’s opinion in Gaines v. Jacobsen (supra) is underscored.
Accordingly, defendant’s motion for partial summary judgment and for leave to include a counterclaim for sums paid after November 19, 1962, is granted. The examination of the defendant as scheduled should be held.