[Civ. No. 25459.   First Dist., Div. Four.   Feb. 20, 1969.]

NORMA BERKELY, Plaintiff and Appellant, v. MARTIN R. BERKELY, Defendant and Respondent.

Turner & Heyler and Dewey E. Turner for Plaintiff and Appellant.

Ralph A. Sullivan for Defendant and Respondent.

CHRISTIAN, J.—On June 17, 1966, a few months after a final decree of divorce was entered in this action, plaintiff-appellant Norma Berkely went through a marriage ceremony in Duluth, Minnesota, with Joseph Pineda. About six months later appellant took a decree in a Wisconsin court annulling the purported new marriage on the ground that a prior subsisting marriage of Pineda rendered his marriage to Norma bigamous and void. Thereupon, in August of 1967, appellant moved the California court for an order determining that because the new marriage was void she was entitled to receive alimony from  respondent under terms of the divorce decree. Hearing evidence that respondent had paid all alimony accrued at the time of appellant's purported marriage to Pineda, and concluding that the Pineda marriage, though void, extinguished appellant's right to further alimony, the court denied the motion. ▮ In this appeal Norma concedes that under Civil Code, section 139,[1] alimony would have been

---

[1]The applicable portion of Civil Code section 139 reads as follows: "Except as otherwise agreed by the parties in writing, the obligation of any party in any decree, judgment or order for the support and main-

extinguished had the Pineda marriage been merely voidable; but citing such cases as *Sefton* v. *Sefton* (1955) 45 Cal.2d 872 [291 P.2d 439], and *Husted* v. *Husted* (1963) 222 Cal.App. 2d 50 [35 Cal.Rptr. 698], she contends for a different result where the second marriage was "illegal and void from the beginning" (Civ. Code, §§ 59, 61).

In *Sefton* v. *Sefton, supra,* 45 Cal.2d 872, the Supreme Court considered the effect on alimony rights of an annulled, voidable remarriage. Although the opinion does not discuss the distinction between void and voidable marriages, the court suggested that different consequences might result from the two types of invalid remarriages (see 45 Cal.2d at pp. 875-876). The actual holding of *Sefton* was that although an annulment is often said to erase entirely the existence of a marriage (see *McDonald* v. *McDonald* (1936) 6 Cal.2d 457 [58 P.2d 163, 104 A.L.R. 1290]) annulment of the *voidable* marriage which had occurred in that case did not reinstate the alimony obligation. One basis for this decision was that third parties would be injured by a rule that an annulment relates back to the time of the marriage ceremony. The court cited section 86 of the Civil Code[2] in support of this theory and also pointed out that other exceptions to the relation-back doctrine have evolved for the protection of third parties (e.g., children of all annulled marriages, whether void or voidable, are legitimate). (Civ. Code, §§ 84, 85.) The court also noted the following reasons why alimony should not be reinstated (45 Cal.2d at pp. 876-877):

1. The former husband is entitled to rely upon his ex-wife's apparent marital status after a new marriage ceremony and should thereafter be permitted to recommit assets previously chargeable to alimony obligations.

2. The basis for the annulment proceedings will likely be known by and of concern to only the individual parties involved, and relief by way of annulment may well never be sought by the offended party.

3. Although the former husband is innocent of any wrongdoing, and the wife may be so, "it accords with the policy of the law to look less favorably upon the more active of two innocent parties when by reason of such activity a loss is

tenance of the other party shall terminate upon the death of the obligor or upon the remarriage of the other party."

[2]Civil Code, section 86: "A judgment of nullity of marriage rendered is conclusive only as against the parties to the action and those claiming under them." (See also *Price* v. *Price* (1938) 24 Cal.App.2d 462 [75 P.2d 655].)

sustained as the result of the misconduct of a stranger." All the reasons given for the *Sefton* holding apply with equal force to a void second marriage. We are therefore not persuaded by dictum to the contrary effect in *Husted* v. *Husted, supra,* 222 Cal.App.2d at p. 53.

Because of the existence of section 139 of the Civil Code, decisions from other states are of only illustrative value; most states do not have similar statutes providing for termination of alimony as a matter of law. As a result, the foreign decisions are concerned either with the effect of the annulled remarriage as a "changed circumstance" between the divorced parties or are involved in interpreting a separation agreement according to the parties' assumed intentions.

Nevertheless, a review of these cases puts the void-voidable marriage question in perspective. *Sutton* v. *Leib* (7th Cir. 1952) 199 F.2d 163 [33 A.L.R.2d 1451], is relied upon by appellant. The annulled remarriage in *Sutton* was like that in the present case: bigamous and void. The federal court held that because under the law of Illinois such a marriage was void as between the two parties to it, it could not be relied upon by a third party either. (199 F.2d at p. 165.) The court declared that the alimony obligation subsisted until a "valid" remarriage. But we note that *Sutton* was decided under Illinois law and therefore is of little aid in interpreting California Civil Code, section 139. Moreover, the decision rests upon an assumption that is negated by section 86 of the California Civil Code, i.e., that the invalidation of a marriage has the same effect upon third parties as it does on the two persons directly involved. Among the states which have considered the void-voidable distinction in the context of alimony reinstatement there is a divergence. (See anno. 48 A.L.R.2d 270, 318.) The majority are consistent with *Sutton, supra,* refusing to consider a void marriage to be a "remarriage" which would terminate alimony obligations (e.g. *Johnson County Nat. Bank & Trust Co.* v. *Bach* (1962) 189 Kan. 291 [369 P.2d 231]). However a significant minority of jurisdictions regard the void-voidable distinction as irrelevant, holding that even a bigamous or incestuous remarriage terminates alimony (e.g., *Keeney* v. *Keeney* (1947) 211 La. 585 [30 So.2d 549] · *Gaines* v. *Jacobsen* (1954) 308 N.Y. 218 [124 N.E.2d 290, 48 A.L.R.2d 312]; *Denberg* v. *Frischman* (1965) 24 App. Div.2d 100 [264 N.Y.S.2d 114], cert. den. 385 U.S. 884 [17 L.Ed.2d 111, 87 S.Ct. 176]; *Herscher* v. *Herscher* (1966) 51 Misc.2d 921 [274 N.Y.S.2d 295]; *Elam* v. *Elam* (1944) 182

Va. 469 [29 S.E.2d 222]). These courts have treated a divorcee as a responsible person who must be held to her decision, presumably relied upon by others, to terminate her right to support from a former husband. (See *Herscher* v. *Herscher, supra,* at pp. 297-298.)

We find no persuasive reason for distinguishing between the effects upon alimony of a void and a voidable remarriage. Either constitutes a remarriage under section 139 of the Civil Code; either terminates the alimony rights of the remarried spouse.

The order denying appellant's motion is affirmed.

Devine, P. J., and Rattigan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 17, 1969. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.