[Civ. No. 35325. Second Dist., Div. One. June 11, 1970.]

DOROTHY B. STONER, Plaintiff and Appellant, v.
JACK B. NETHERCUTT et al., Defendants and Appellants.

**COUNSEL**

Crowley & Goffin and Rayford Fountain for Plaintiff and Appellant.

Leon B. Brown and J. Dan Olincy for Defendants and Appellants.

**OPINION**

**GUSTAFSON, J.**—Andrew Norman, a wealthy man, was the trustor of an amendable living trust. Defendant Andrew Norman Foundation, a non-profit corporation, receives for use for its general charitable purposes the net income from the trust after the payment of fees, expenses and specified amounts to designated individuals.

On January 14, 1958, the trustor amended the trust to include plaintiff

Dorothy B. Stoner as one of the individuals to receive a specified amount before distribution of the remainder to the corporation. Upon the death of Andrew Norman, plaintiff was to receive $500 per month "provided she is unmarried on that date, and continuing for her lifetime or until her remarriage." Andrew Norman died October 23, 1959, and plaintiff received 12 monthly payments. The trustee ceased making payments to plaintiff when plaintiff informed the trustee that on October 1, 1960, she had married Gerald T. McNees.

McNees was married to another woman at the time he married plaintiff. Thus plaintiff's marriage to McNees was "illegal and void from the beginning." (Civ. Code, § 61, now Civ. Code, § 4401.) Although plaintiff knew that McNees was a resident of California and that he had obtained no final decree of divorce in California, she relied upon his representation that a divorce decree which he had obtained in Mexico was valid. McNees and plaintiff lived together as husband and wife for three years after which she filed a complaint for divorce. When she substituted attorneys in the divorce action, her new attorneys advised her that the marriage was bigamous and an amended complaint was filed seeking an annulment. The annulment was granted November 4, 1964.

██ Claiming that her void marriage to McNees was not a "remarriage" within the meaning of the trust instrument, plaintiff demanded of the trustee that she be paid $500 per month beginning from the time that the monthly payments ceased in 1960. The trustee refused to comply with her demand and this action to require the trustee to pay plaintiff followed.

The trial court found that the plaintiff was entitled to be reinstated as a beneficiary, but that she was estopped to recover the payments which would otherwise have been due to her from the date she notified the trustee of her "remarriage" to the date she notified the trustee that there had been no "remarriage."

Plaintiff appeals from that portion of the judgment which denies her payments for the period October 1960 to June 1965. Defendants appeal from the judgment declaring that plaintiff is entitled to payments from June 1965. Because of the conclusion we reach with respect to defendants' appeal, we do not reach the merits of plaintiff's appeal.

██ The word "remarriage" could mean either a ceremony of marriage even though invalid or a valid marriage. Under the doctrine of *Pacific Gas & Elec. Co.* v. *G. W. Thomas Drayage & Rigging Co.* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641] and *Estate of Russell* (1968) 69 Cal.2d 200 [70 Cal.Rptr. 561, 444 P.2d 353] extrinsic evidence is admissible to ascertain what was intended by the trustor. ██ In the case at bench, both the plaintiff and the trustor's attorney testified to the desires

of the trustor with respect to the plaintiff. However, none of the testimony sheds any light on what the trustor meant by the word "remarriage." Because we find that another principle of law precludes plaintiff from recovering, we may assume *arguendo* that the trustor, as claimed by plaintiff, referred to a valid marriage.

The principle to which we refer is estoppel. In *Sefton* v. *Sefton* (1955) 45 Cal.2d 872 [291 P.2d 439] the court held that a marriage which was voidable and later annulled terminates the right to receive payments under a property settlement agreement or pursuant to a judgment under section 139 of the Civil Code (now Civ. Code, § 4801) which provides for cessation of payments upon "remarriage." While the court stressed as the basis for its decision the right of the obligor to rely upon the apparent marital status of the obligee, it did not condition the result upon actual reliance by the obligor to his detriment. In that case the obligor urged in the trial court that he had changed his position in reliance upon the apparent remarriage, but no finding was made on that issue in the trial court and the Supreme Court invoked the estoppel doctrine without regard to whether the obligor relied upon the apparent marriage.

In *Berkely* v. *Berkely* (1969) 269 Cal.App.2d 872 [75 Cal.Rptr. 294] and *Fry* v. *Fry* (1970) 5 Cal.App.3d 169 [85 Cal.Rptr. 126] the *Sefton* doctrine was extended to a void marriage subsequently annulled without regard to whether the obligor relied on the purported marriage to his detriment.

In the case at bench the obligor is the trustee. While the trustee paid to the nonprofit corporation from 1960 to 1965 amounts which would otherwise have gone to plaintiff, the trustee since 1965 has accumulated and withheld from distribution to the nonprofit corporation an amount more than sufficient to pay to plaintiff $500 per month plus interest from October 1960 to the present time. There is no evidence that the nonprofit corporation relied upon plaintiff's apparent remarriage to its detriment.

If a support obligation is permanently terminated because a wholly void marriage estops a woman from claiming that there has been no "remarriage," we fail to perceive why any different result should follow simply because the obligation to the woman is that of a trustee under a trust instrument.

The trustor, a jilted suitor of plaintiff many years ago (*Norman* v. *Burks* (1949) 93 Cal.App.2d 687 [209 P.2d 815]), continued to be concerned about plaintiff's welfare. From time to time before his death, the trustor gave plaintiff considerable sums of money. When the trustor amended his trust to include plaintiff as a beneficiary, she was married to Stoner, but

had separated from him and was seeking a divorce. The trustor conditioned the payment to plaintiff on her being "unmarried" on the date of his death. She met that condition because by the time the trustor died she had received a final decree of divorce from Stoner. The trustor, as revealed by the extrinsic evidence, believed that plaintiff would have no difficulty in finding another husband and wanted to provide for her only until someone else assumed the obligation to support her. Our holding is consistent with his expressed intention.

Had plaintiff's marriage to McNees been valid, there is no contention that she would have been entitled to reinstatement as a beneficiary under the trust instrument had McNees died the week following the marriage. Similarly, had divorce proceedings been instituted a week after a valid marriage, plaintiff would not have been entitled to reinstatement as a beneficiary of the trust. In either case, plaintiff might have received little or nothing from McNees and her need would have been as great as though she had never married him. Nevertheless, the trust instrument did not attempt to provide that plaintiff would be entitled to payments in certain situations despite remarriage. The sole criterion for the cessation of payments was "remarriage." Plaintiff knew of the trust provision for her and she thus knew that remarriage would terminate the payments to her even though subsequent events might leave her with little or nothing from her new husband.

As it turned out, however, her marriage to McNees put her in no different position than she would have been had the marriage been valid. ■ Where, as was the case here, a woman marries a man on his representation that he has obtained a divorce from a former wife and is free to marry, the woman is entitled to "everything flowing from a valid marriage," including support for herself, on the basis that the man is estopped to deny that the marriage is bigamous. (*Spellens* v. *Spellens* (1957) 49 Cal.2d 210 [317 P.2d 613].) ■ Plaintiff need not have amended her complaint against McNees from divorce to annulment. What a court would have given plaintiff by way of alimony is, of course, conjectural. Whatever the award might have been, however, it would not have been any less because the marriage was bigamous instead of valid. In any event, during the time when the complaint still sought a divorce, plaintiff and McNees entered into a property settlement agreement whereby he was to pay alimony to plaintiff in the amount of $300 per month from November 6, 1963, to July 1, 1967. McNees complied with that agreement. In the light of the fact that plaintiff acquired the same rights against McNees as she would have had if her marriage to McNees had been valid, we think that she should be estopped, as were the women in *Sefton, Berkely* and *Fry,* to deny that a remarriage occurred.

The judgment for plaintiff is reversed and plaintiff's appeal is dismissed. Costs on appeal are awarded to defendants.

Lillie, Acting P. J., and Thompson, J., concurred.