[No. H028804. Sixth Dist. Feb. 7, 2006.]

In re the Marriage of ERIC and REBEKAH CAMPBELL.
ERIC CAMPBELL, Appellant, v.
REBEKAH CAMPBELL, Respondent.

## COUNSEL

Law Offices of Donald Kilmer and Donald E. J. Kilmer, Jr., for Appellant.

Roberts & Elliott, James K. Roberts, Kirk Elliott and Sharmi Shah for Respondent.

## OPINION

**PREMO, Acting P. J.**—Family Code section 4337[1] provides: "Except as otherwise agreed by the parties in writing, the obligation of a party under an order for the support of the other party terminates upon the death of either party or the remarriage of the other party." The sole question before us is whether this section applies to terminate a temporary spousal support order when the supported spouse "remarries" prior to judgment dissolving the first marriage. We conclude, as the trial court did, that the section does not apply in this situation.

### I. FACTS

Eric Campbell and Rebekah Campbell were married for over 13 years. Eric[2] filed a petition for dissolution of the marriage on February 26, 2004. In or about April 2004, pursuant to an agreement between the parties, the trial court ordered Eric to pay Rebekah $3,500 per month as temporary spousal support. (§ 3600.) In October 2004, while the matter was still pending, Rebekah was remarried in Nevada. The remarriage, of course, was void, since Rebekah was still married to Eric. (§ 2201; Pen. Code, § 281.)

Eric filed a motion to terminate his spousal support obligation. Eric asked the court to grant a status-only judgment and to enter the judgment nunc pro tunc. Eric argued that a nunc pro tunc judgment dissolving his marriage to Rebekah as of a date prior to her remarriage would render her most recent marriage valid and, pursuant to section 4337, he would be relieved of the obligation to pay temporary spousal support. Eric also argued that even though Rebekah's remarriage was void, section 4337 extinguished the temporary support order as a matter of law. Eric did not seek to terminate or modify the support order based upon changed circumstances. (§ 3603.) Rebekah opposed the motion. She argued that since her attempted remarriage was void, she had not actually remarried and section 4337 did not apply.

---

[1] Hereafter, all unspecified statutory references are to the Family Code.

[2] Consistent with the tradition in marital dissolution cases, we refer to the parties by their given names for the sake of clarity and mean no disrespect in doing so. (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1136, fn. 1 [97 Cal.Rptr.2d 707].)

At the time of the hearing on Eric's motion, Rebekah was struggling with sobriety. The couple's two young daughters lived with Eric; Rebekah had limited contact with them. She was not employed and she had no income. The marital property had not been divided and the issue of whether Rebekah would be entitled to future spousal support had not been fully explored. Rebekah's counsel explained that Rebekah had a "significant alcohol problem," and that she was "going through a lot." He represented that an unopposed petition seeking annulment of the recent marriage was then pending. According to Rebekah's brief on appeal, the annulment has since been granted.

The trial court denied Eric's motion for a status-only judgment and denied his request to terminate temporary spousal support. The court stated: "I don't think the issue is whether [Rebekah's remarriage is a] void or voidable marriage per se. I think it is the triggering event that kicks in [section] 4337 is that there has to be a final judgment which has not happened in this case. [¶] Now, why [Rebekah] went and got married during the pendency of this dissolution I will never know. But we don't even allow people to waive support on a long term marriage unless there's a clear record in court under oath that they understand the consequences of waiving support. Particularly in the context of a long term marriage where the [L]egislature has asked the courts to be very very careful about terminating support.

"In this case there simply is not a final judgment and I don't think balancing all of those concerns it would have been the intent of the court or—courts or the [L]egislature to terminate support at this stage where discovery on the issue of long term support hasn't even been accomplished. So, respectfully I'm denying your motion."

On appeal, Eric challenges only the trial court's order denying his request to terminate spousal support.

## II. Discussion

### A. *Appealability*

Before considering the merits of Eric's appeal, we first dispose of Rebekah's argument that Eric has appealed from a nonappealable order. The rule is this: "Even if it is technically interlocutory, an order dispositive of the rights of the parties in relation to a collateral matter, or directing payment of money or performance of an act, may be subject to direct appeal. For this reason, it has long been established that severable portions of a judgment may

be separately appealed, particularly in dissolution cases." (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 115–116 [95 Cal.Rptr.2d 113], citing *In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368 [134 Cal.Rptr. 197, 556 P.2d 297].) Indeed, our Supreme Court has held that an order granting or denying temporary spousal support "is directly appealable as a final judgment independently of the main action." (*Greene v. Superior Court* (1961) 55 Cal.2d 403, 405 [10 Cal.Rptr. 817, 359 P.2d 249].) The trial court's order denying Eric's motion to terminate temporary spousal support was dispositive of the parties' rights with respect to the collateral issue of temporary support. It is an appealable order.

We also reject Rebekah's assertion that Eric has not provided an adequate record for review because he has not included the existing temporary support order in the record. Eric is not appealing from the original order of temporary support. He is appealing from the denial of his motion to modify that order based upon facts extrinsic to the order itself. The parties do not dispute the amount or validity of the support order, nor does either party suggest that the terms of the order would have any bearing upon the question presented here. Accordingly, the order for temporary support is not necessary to our review.

## B. *Section 4337*

We now come to the substantive issue before us: Does section 4337 apply to extinguish a temporary spousal support obligation when the supported spouse attempts to remarry prior to judgment dissolving her existing marriage?

■ The question is one of statutory interpretation. The rules for interpreting a statute have been stated many times. "Statutes are to be interpreted in accordance with their apparent purpose . . . ." (*Kaiser Foundation Health Plan, Inc. v. Lifeguard, Inc.* (1993) 18 Cal.App.4th 1753, 1762 [23 Cal.Rptr.2d 235].) First and foremost, we look for that purpose in the actual language of the statute. (*Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753, 763 [280 Cal.Rptr. 745, 809 P.2d 404].) If the meaning is without ambiguity, doubt, or uncertainty, then the language controls. (*Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 998 [275 Cal.Rptr. 201, 800 P.2d 557].) If the meaning of the words is not clear, we may refer to various extrinsic aids, including the history of the statute, to determine the intent of the Legislature. (*Kaiser Foundation Health Plan, Inc. v. Lifeguard, Inc., supra*, 18 Cal.App.4th at p. 1762.) Finally, if neither the words of the statute nor its legislative history reveal a clear meaning, we apply reason and practicality, and interpret the statute in accord with common sense and justice, and to avoid an absurd result. (*Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1240

[8 Cal.Rptr.2d 298].) The interpretation and application of a statutory scheme is a pure question of law. Accordingly, we apply our independent review. (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425 [34 Cal.Rptr.3d 547].) With these rules in mind, we turn to the problem at hand.

Rebekah argues that section 4337 does not apply to temporary orders for spousal support or that it does not apply here, where the remarriage was void. The statutory language does not clearly support the first argument.

■ Temporary or pendente lite spousal support is governed by section 3600, which states in pertinent part: "During the pendency of any proceeding for dissolution of marriage or for legal separation of the parties . . . the court may order (a) the husband or wife to pay any amount that is necessary for the support of the wife or husband . . . ." "The purpose of temporary spousal support is to maintain the status quo as much as possible pending trial." (*In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 525 [70 Cal.Rptr.2d 488].) Subject only to the supported party's "need" and the supporting party's "ability to pay," the amount of a temporary spousal support award lies within the sound discretion of the trial court. (*In re Marriage of Murray* (2002) 101 Cal.App.4th 581, 594 [124 Cal.Rptr.2d 342].)

Section 4300 applies to permanent spousal support.[3] The purpose of permanent spousal support is "to provide financial assistance, if appropriate, as determined by the financial circumstances of the parties after their dissolution and the division of their community property." (*In re Marriage of Burlini* (1983) 143 Cal.App.3d 65, 69 [191 Cal.Rptr. 541].)

As we stated above, section 4337 provides: "Except as otherwise agreed by the parties in writing, the obligation of a party under an order for the support of the other party terminates upon the death of either party or the remarriage of the other party."

■ Finally, section 155 defines "support order" as a "judgment or order of support . . . whether temporary or final."

As Rebekah observes, section 4337 is linked structurally to section 4330 in that both sections are contained in the chapter of the Family Code devoted to permanent spousal support orders, while section 3600 is located under the part where definitions and general provisions are located. Rebekah argues that, by

---

[3] Although awards of spousal support upon dissolution or legal separation are not, strictly speaking, "permanent," they are often referred to as such in order to distinguish them from temporary orders made pursuant to section 3600.

inference from its location in the statutory scheme, section 4337 should be interpreted to apply only to permanent orders. But since section 155 expressly defines "support order" to mean either a temporary or final order, the reference in section 4337 to an "order for support" is more reasonably interpreted to refer to both temporary and permanent spousal support orders. Indeed, it is not difficult to foresee a situation where a temporary spousal support order would survive a status-only judgment. In such a case, the supported spouse could remarry legally and, if section 4337 applied, the remarriage would extinguish the temporary support obligation. Assuming, without deciding, that section 4337 applies to temporary orders in that situation, we are confident that it does not apply prior to dissolution of the existing marriage.

■ Section 4337 is triggered by two circumstances, death and remarriage. As to the second trigger, remarriage, a person may *never* legally remarry prior to dissolution of his or her existing marriage. (§ 2201; Pen. Code, § 281.) Indeed, "marriage" is defined by Black's Law Dictionary as "The legal union of a couple as husband and wife." (Black's Law Dict. (8th ed. 1999) p. 992.) Since remarriage is a legal impossibility in California prior to dissolution of the existing marriage, it is reasonable to conclude that the Legislature never expected or intended that "remarriage," within the meaning of section 4337, would encompass an attempted remarriage prior to dissolution of the first marriage.[4] Accordingly, we agree with Rebekah that the statute does not apply in the situation here.

Our conclusion is consistent with principles of common sense and justice. Application of section 4337 prior to dissolution would deprive the trial court of the discretion so necessary at this unsettled stage of the proceedings. It may be that a spouse's attempt to remarry prior to dissolution would warrant termination of temporary support where the conduct was evidence of a real change of circumstances. The court has discretion to terminate support in that case. (§ 3603.) But where the attempted remarriage is due to a lapse in judgment on the part of the supported spouse and where the supported spouse actually has no means of support, no funds to prosecute the litigation, and no control over the marital property that has yet to be divided, the attempted "remarriage" does not diminish the supported spouse's need for support pending trial. Automatic termination of the temporary support order in that

---

[4] We also note that the Legislature did not need to pass section 4337 in order to terminate a temporary spousal support order upon the death of a party prior to dissolution. Where a party dies before the marriage is dissolved, the dissolution action abates. (*In re Marriage of Allen* (1992) 8 Cal.App.4th 1225, 1229 [10 Cal.Rptr.2d 916].) Thus, a pendente lite spousal support order would, by its very nature, terminate by operation of law upon the death of either party prior to dissolution of the marital status. "You can't very well have a viable pendente lite support order—that is, an order pending trial—when there isn't going to be any trial . . . ." (*County of Orange v. Quinn* (2002) 97 Cal.App.4th 956, 962 [118 Cal.Rptr.2d 833].)

situation would be manifestly unjust and would conflict with the purposes for which temporary spousal support is intended.

Eric argues that section 4337 operates whether or not the remarriage is void. He relies upon a series of cases, beginning with *Sefton v. Sefton* (1955) 45 Cal.2d 872 [291 P.2d 439] (*Sefton*), which hold that annulment of a void or voidable remarriage does not revive a prior support obligation. *Sefton* concerned former Civil Code section 139 (now section 4337). The supported spouse in *Sefton* had remarried but obtained an annulment on the basis of fraud. (*Sefton, supra,* 45 Cal.2d at p. 874.) The Supreme Court explained that when a party obtains an annulment, the annulment relates back and erases the marriage itself. Thus, if the relation-back theory were to be strictly applied, the supported spouse's remarriage never existed, and she would remain entitled to continue to receive the alimony previously awarded. (*Id.* at p. 875.) The court noted, however, that the doctrine was a legal fiction designed to achieve substantial justice as between the parties to the voidable marriage and should be sparingly applied in cases involving the rights of third parties. (*Ibid.*) *Sefton* reasoned that by celebrating the marriage, the supported spouse had held herself out as having remarried so that the supporting spouse, as an innocent third party, was entitled to rely upon the apparent remarriage, assume his support obligation had terminated, and recommit his assets elsewhere. (*Id.* at p. 876.) *Berkely v. Berkely* (1969) 269 Cal.App.2d 872 [75 Cal.Rptr. 294], applied *Sefton*'s reasoning to a marriage that was void at the outset because the supported party married a man who was already married. The *Berkely* court concluded that a "divorcee" is a "responsible person who must be held to her decision, presumably relied upon by others, to terminate her right to support from a former husband." (*Id.* at p. 875; accord, *Fry v. Fry* (1970) 5 Cal.App.3d 169, 171–172 [85 Cal.Rptr. 126].)

The flaw in Eric's argument is that the issue in these cases was completely different than the issue here. The question in *Sefton* and *Berkely* was not whether the statute applied to the supported spouse's remarriage—there was no dispute that it did. The question was whether annulment of the second marriage *revived* the prior obligation. In concluding that the prior obligation was not revived, these cases applied what is essentially an estoppel analysis. Because the supported spouse was free to enter into a valid remarriage, the supporting spouse could reasonably rely to his detriment upon the apparent remarriage, even though the remarriage was later determined to be void. Nothing in these cases contemplates the situation alleged here, where neither spouse may legally remarry because they are still married to each other. Under these circumstances, the supporting spouse cannot plausibly argue that he detrimentally relied upon the apparent validity of the other's remarriage. In any event, since we have concluded that section 4337 does not apply in the first instance, these cases are not on point.

■ We conclude that the term "remarriage," within the meaning of section 4337, does not include a supported spouse's attempt to remarry prior to judgment dissolving the existing marriage.

## III. Disposition

The order of the superior court filed March 16, 2005, is affirmed.

Bamattre-Manoukian, J., and Duffy, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 26, 2006, S142014.