Filed 12/7/21  Marriage of Harvey CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of MICHAEL S. and CYNTHIA M. HARVEY. | |
| MICHAEL S. HARVEY, Appellant, v. CYNTHIA M. HARVEY, Respondent. | F078851 (Super. Ct. No. 457566) **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Kellee C. Westbrook, Judge.

Downey Brand and Jay-Allen Eisen and Joseph K. Little; Shore, McKinley, Conger & Jolley and John H. McKinley for Appellant.

Arnold & Porter Kaye Scholer and Sean M. SeLegue; Goss & Goss, Michael A. Goss and Mark A. Goss for Respondent.

-ooOoo-

Appellant Michael S. Harvey appeals from a December 21, 2018 order of the Stanislaus County Superior Court denying a request for order (RFO)[1] to end temporary spousal support to respondent Cynthia M. Harvey.[2]  We find the court's ruling erroneous as a matter of law and reverse the order.

## BACKGROUND

Michael and Cynthia married in 1988.  Three years later, Michael founded Enviro Tech Chemical Services, Inc. (Enviro Tech), a chemical manufacturing company.  By 2010, Michael and Cynthia jointly owned 825 shares in Enviro Tech, amounting to nearly 70 percent of the outstanding common stock.

Michael and Cynthia separated in October 2011.  Michael petitioned for dissolution of marriage on November 10, 2011.  In a "**STIPULATION AND ORDER RE TEMPORARY ORDERS**" filed March 13, 2012, the parties agreed that Michael would pay Cynthia temporary spousal support.  The relevant provision states:

> "**Spousal Support**:  [Michael] shall pay to [Cynthia] the sum of $[19,000] per month spousal support payable on the first (1st) day of each and every month commencing April 1, 2012, and continuing thereafter until further order of the Court.  The Court reserves jurisdiction over retroactivity of spousal support.  The Court reserves jurisdiction over the potential issue of [Michael]'s reduction in salary and its effect on spousal support, if any."

In a "**FINAL JUDGMENT ON RESERVED ISSUES**" filed July 23, 2018, the superior court concluded that the fair market value of Cynthia's interest in the jointly

---

[1]     In a family law proceeding, an RFO is the equivalent of a motion or notice of motion.  (See Cal. Rules of Court, rule 5.92(a)(1)(A) [request for court order; responsive declaration]; Hogoboom & King, Cal. Practice Guide:  Family Law (The Rutter Group 2021) ¶ 5:290a, p. 5-171 ["Although this terminology is unique to family law practice, it does not effect any change in motion practice."].)

[2]     Henceforth, where appropriate, we will identify the parties individually by their first names to avoid confusion.  No disrespect is intended.  (See *Estate of Austin* (2010) 188 Cal.App.4th 512, 514, fn. 1; *Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1136, fn. 1.)

owned Enviro Tech shares was $21,332,000 as of December 31, 2017, and awarded Michael "all right, title, and interest in and to [Cynthia]'s 412.5 community property [Enviro Tech] shares." The court ordered Michael to pay Cynthia $21,332,000 as equalization and "irrevocably elect" one of two options "[o]n or before August 15, 2018": (1) a one-time lump sum payment; or (2) installments pursuant to the terms and conditions of a seven-year promissory note. Concerning "PERMANENT SPOUSAL SUPPORT" (underlining omitted), the court pronounced:

> "7. The Court finds the evidence adduced at trial inadequate to support plenary consideration and findings on the required Family Code section 4320 factors. [Citations.] The Court therefore makes no permanent spousal support award at this time;

> "8. The current temporary spousal support order shall continue without change until permanent spousal support is decided;

> "9. The Court expressly reserves jurisdiction over the issue of permanent spousal support. [Citations.];

> "10. Either party may move for an order establishing or terminating permanent spousal support without demonstrating a change of circumstances after [Michael's] equalization payment election."[3]

On October 3, 2018, Michael filed an RFO and asked the court to end temporary spousal support to Cynthia. He elaborated:

> "Pursuant to the Final Judgment on Reserved Issues filed July 23, 2018, the Court . . . required me to make an equalizing payment of

---

[3] Michael and Cynthia filed an appeal and cross-appeal, respectively, from the July 23, 2018 judgment. Michael contends that the court ignored a provision of the parties' "**SHAREHOLDER BUY-SELL AGREEMENT**" that "sets out the terms on which the [Enviro Tech] shares are to be purchased from Cynthia" and imposed "significantly more burdensome" and "onerous terms and conditions on [his] acquisition of [Cynthia's] shares." Cynthia disputes the court's valuation of her interest in the jointly owned Enviro Tech shares as well as its finding that she "failed to establish any impairment of [her] undivided one-half interest in the community estate from any breach of fiduciary duty by [Michael]." In that appeal and cross-appeal, neither party raises arguments pertaining to spousal support. (See case No. F078166.)

3.

$21,332,000, either in cash or pursuant to a secured promissory note. I will elect to make payment pursuant to the secured promissory note. The terms of the note payments would be the sum of $21,332,000, a term of seven years, and bearing initial interest at six percent (6%), with interest accruing from August 15, 2018, and payments commencing September 1, 2018.

"Attached hereto as Exhibit 'A' is a true and correct copy of an amortization schedule for the payments ordered in the Judgment. The monthly principal and interest payments total $311,629.68. The initial interest portion is $106,660.00 and the principal portion is $204,969.00[.]

"The interest component of the equalization payment far exceeds the marital standard of living and any of the highest amount of expenses claimed by [Cynthia] on any income and expense declaration filed with the Court. Her total expenses on each Income and Expense Declaration are as follows:

| | |
|---|---|
| "March 9, 2012 | $20,193 |
| "March 24, 2015 | $30,668 |
| "August 28, 2015 | $33,893 |
| "February 12, 2017 | $40,208 |
| "March 14, 2018 | $40,655 |

"I have elected payment of the equalization payment pursuant to a secured promissory note and will commence payments on September 1, 2018. Based thereon, I am requesting that the temporary support be reduced to zero . . . ."

On December 21, 2018, the court entered an order denying the RFO. It reasoned:

"Here, [Michael]'s request is to 'change' and 'end' the current temporary support order. [Citation.] While the Court may not . . . terminate its support jurisdiction, the Court construes [Michael]'s request as one to modify the order to zero dollars. Regarding the changed circumstances rule, the parties have stipulated to—and the Court has approved—an order that procures a large lump sum payment to [Cynthia and] provides for monthly payments thereafter in an amount that is over fifteen times larger than the present temporary support order.[4] [Citation.]

---

**4** In a "**STIPULATION AND ORDER REGARDING UNCHARACTERIZED PAYMENTS TOWARD EQUALIZATION PAYMENT OWED FROM**

"Even though these payments are 'uncharacterized' and without prejudice to each party's positions on appeal, it is significant both that the payments are reflective of the amounts that [Michael] would pay to [Cynthia] by way of installments under the secured note election for the equalization payment ordered by the Court, and that [Michael] 'shall not be entitled to restitution from [Cynthia] of any payment made pursuant to this Stipulation and Order, regardless of whether the Judgment is reversed or modified, in whole or part, for any reason, including appeal.' [Citation.] It appears to the Court almost unquestionable that such amounts would suffice to demonstrate a 'changed circumstance' that is 'material' to the temporary support order at issue, particularly as they are not subject to disgorgement irrespective of the outcome of the appeal.

"That being said, the [July 23, 2018] judgment in this case reserved the Court's jurisdiction with respect to a permanent spousal support award, but was not silent as to the matter at hand. To the contrary, the Court ruled as follows: '8. *The current temporary spousal support order shall continue without change until permanent spousal support is decided*; . . . 10. Either party may move for an order establishing or terminating permanent spousal support without demonstrating a change of circumstances *after [Michael]'s equalization payment election*.' [Citation.]

". . . [T]he Court finds that it could not have been more clear. Had the parties not failed to adduce adequate evidence at trial for a permanent support award, the issue of temporary support would now be moot. As it is, the Court had little choice but to reserve support jurisdiction and continuation of temporary support was therefore necessary to preserve the status quo pending [Michael]'s equalization payment election, at which time all need for spousal support might be obviated by such. [Citations.]

"The Court nevertheless strictly constrained the duration of the non-modifiability period of the temporary support order post-judgment to a date certain, to wit, August 15, 2018, a roughly three week period following rendition of judgment. At all times pertinent since that date, nothing has precluded [Michael] from filing to establish or terminate permanent spousal support, and thereby supersede the temporary support order as a matter of law. [Citations.] Of course, [Michael]'s appeal, and [Cynthia]'s cross-

---

**PETITIONER TO RESPONDENT**" filed November 7, 2018, the parties agreed that Michael had tendered a $625,926 payment to Cynthia and "shall pay [Cynthia] not less than $287,614 on the 1st day of each month toward the equalization payment amount owed by him to [her]" starting November 1, 2018.

appeal,[5] now prohibit the Court from terminating its jurisdiction over spousal support but . . . does not prohibit the Court from entertaining a motion to establish or set permanent spousal support at any level, including zero dollars.

"Unfortunately for [Michael], the present motion only addresses temporary, rather than permanent, spousal support.  The Court orders that no further request to terminate spousal support jurisdiction or to modify the current temporary support order will be entertained until an order establishing permanent support has first been entered."

## DISCUSSION

On appeal, Michael argues that "denial of the RFO on the ground that the [July 23, 2018] judgment rendered temporary support non-modifiable was legally erroneous and constitutes a reversible abuse of discretion."

## I.    Standard of review

"We review a trial court decision on a request to modify spousal support for an abuse of discretion."  (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 957.) " ' " 'So long as the court exercised its discretion along legal lines, its decision will not be reversed on appeal if there is substantial evidence to support it.' " ' [Citation.]" (*Ibid.*)  "However, where the appeal raises a question regarding the proper interpretation of a statute, or the proper application of the law to uncontested facts, the standard of review is de novo."  (*In re Marriage of Left* (2012) 208 Cal.App.4th 1137, 1145.)

## II.   Analysis

The superior court's December 21, 2018 order highlighted certain language of the July 23, 2018 judgment, namely, (1) "[t]he current temporary spousal support shall continue *without change* until permanent spousal support is decided" (italics added); and (2) "[e]ither party may move for an order establishing or terminating permanent spousal support without demonstrating a change of circumstances" after August 15, 2018.  Based on these sentences, the court concluded that "no further request to terminate spousal

---

**5**      See footnote 3, *ante*, page 3.

6.

support jurisdiction or to modify the current temporary support order will be entertained until an order establishing permanent support has first been entered."  It thus denied Michaels' RFO—notwithstanding the merits of the request—because the RFO "only addresses temporary, rather than permanent, spousal support."

Michael contends that the July 23, 2018 judgment "could not preclude the court from granting [his] RFO to change or reduce temporary support."  (Boldface, underlining, & some capitalization omitted.)  He asserts:

> "The court lacked jurisdiction to order that temporary support continue without change.  Family Code[6] sections 3603 and 3591, subdivision (a) empower a court to modify or terminate support at any time.  Under section 3591, subdivision (c), a court has no power to order that support is not modifiable unless the parties have entered into a written agreement or stipulation in open court that 'specifically provides that the spousal support is not subject to modification or termination.'  [¶]  There is no such agreement or stipulation in this case.  In providing that temporary support would continue without change, the court granted relief it had no jurisdiction to grant.  That provision [of the July 23, 2018 judgment] was, therefore, null and void and not a valid basis on which to deny Michael's RFO."

a.  *Modifiability of the March 13, 2012 stipulation/order's temporary spousal support provision*

"The rules for interpreting a statute have been stated many times.  'Statutes are to be interpreted in accordance with their apparent purpose . . . .'  [Citation.]  First and foremost, we look for that purpose in the actual language of the statute.  [Citation.]  If the meaning is without ambiguity, doubt, or uncertainty, then the language controls.  [Citation.]"  (*In re Marriage of Campbell* (2006) 136 Cal.App.4th 502, 506.)

"An order for support of either party based on [an] agreement shall be law-imposed and shall be made under the power of the court to order spousal support."  (§ 3590; see § 3600 [authorizing trial court to order temporary spousal support during

---

**6**      Subsequent statutory citations refer to the Family Code.

7.

pendency of dissolution proceedings]; *In re Marriage of Campbell*, *supra*, 136 Cal.App.4th at p. 504 [trial court ordered husband to pay monthly temporary spousal support to wife pursuant to parties' agreement].)  In general, "the provisions of an agreement for the support of either party are subject to subsequent modification or termination by court order."  (§ 3591, subd. (a); see § 3651, subd. (a); Hogoboom & King, Cal. Practice Guide:  Family Law, *supra*, ¶ 5:173, p. 5-108 ["*Unless earlier modified or terminated*, a temporary spousal support order continues in effect until entry of judgment (at which point it is superseded by the 'permanent' support order contained in the judgment)."  (italics added)].)[7]  There are two qualifications.  The first—which has no bearing on the case at bar—is that "[a]n agreement may not be modified or terminated as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate."  (§ 3591, subd. (b); see §§ 3603, 3651, subds. (c)(1) & (e).)  The second is that "[a]n agreement for spousal support may not be modified or revoked to the extent that a written agreement, or, if there is no written agreement, an oral agreement entered into in open court between the parties, specifically provides that the spousal support is not subject to modification or termination."  (§ 3591, subd. (c); see § 3651, subds. (d) & (e); *In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 727 ["[A]ll support orders, even those based upon the agreement of the parties, are modifiable prospectively except *spousal support* orders that the parties have agreed may not be modified."].)  The plain and unambiguous wording of the relevant statutes confirms that a spousal support agreement is modifiable by court order absent the parties' agreement to the contrary.

---

[7]     Hogoboom and King's treatise, though not binding (see *Ammerman v. Callender* (2016) 245 Cal.App.4th 1058, 1086), nonetheless has been cited favorably by the California Supreme Court.  (See, e.g., *In re Marriage of Green* (2013) 56 Cal.4th 1130, 1137-1138; *In re Marriage of Walrath* (1998) 17 Cal.4th 907, 913; *In re Marriage of Oddino* (1997) 16 Cal.4th 67, 82, fn. 8, 84, 88.)

Based on the aforementioned statutes and the undisputed facts on record, we find the temporary spousal support provision in the March 13, 2012 stipulation/order modifiable by court order. This provision details the monthly amount and the date of commencement. There is no set end date: the payments are to continue "until further order of the Court." The provision also states that the court "reserves jurisdiction" "over retroactivity of spousal support" and "over the potential issue of [Michael]'s reduction in salary and its effect on spousal support, if any." "It is well established that no specific formula or ' "magic" words' are required to preclude modification." (*In re Marriage of Hibbard* (2013) 212 Cal.App.4th 1007, 1017.) However, "some specific unequivocal language directly on the question of modification is required." (*Fukuzaki v. Superior Court* (1981) 120 Cal.App.3d 454, 458, citing former Civil Code, § 4811, subd. (b); see, e.g., *In re Marriage of Kilkenny* (1979) 96 Cal.App.3d 617, 618-620 [support obligations set forth in parties' separation agreement nonmodifiable by court decree where terms of agreement characterized as " 'absolute, unconditional and irrevocable' "]; *In re Marriage of Harris* (1976) 65 Cal.App.3d 143, 150 [parties agreed spousal support was not modifiable "in their stipulation in open court" and "their marital settlement agreement"]; see also *In re Marriage of Hufford* (1984) 152 Cal.App.3d 825, 835 ["[D]raftsmen should specifically state that 'spousal support is nonmodifiable' in the provision for spousal support if that is the intended agreement of the parties."].) Here, there is no "specific unequivocal language" that manifests Michael and Cynthia's intent to proscribe modification by the court. We further note that Cynthia seemingly concedes the issue in her respondent's brief, failing to point out anything in the March 13, 2012 stipulation/order rendering temporary spousal support nonmodifiable.

b. *Abuse of discretion*

The December 21, 2018 order denying Michael's RFO to end temporary spousal support was based on the fallacy that support had been made nonmodifiable by the court, even though there was no written or oral agreement by the parties "specifically

9.

provid[ing] that . . . spousal support is not subject to modification or termination."
(§ 3591, subd. (c).) "A 'disposition that rests on an error of law constitutes an abuse of discretion.' [Citation.]" (*In re Butler* (2018) 4 Cal.5th 728, 743.) Given the court's own observation that there was ample evidence of a " 'changed circumstance' that is 'material' to the temporary support order at issue" (see *In re Marriage of Samson* (2011) 197 Cal.App.4th 23, 29 ["A change of circumstances is required for the modification of support orders, including temporary ones."]), the denial was prejudicial.

   c.   *Propriety of a collateral attack on the July 23, 2018 judgment*

   Cynthia maintains that the December 21, 2018 order should be affirmed. She argues:

> "The [July 23, 2018] judgment had decreed that Michael must continue paying temporary support without change until a determination of permanent support. If Michael wished to challenge that order as erroneous or beyond the court's authority, his avenue was direct appeal. . . . [¶] The appellate courts have repeatedly rejected attempts such as Michael's to mount a collateral challenge to a temporary support order . . . ."

Michael counters in his reply brief:

> "Paragraph 8 of the [July 23, 2018] judgment is not . . . merely an act in excess of jurisdiction that is now beyond collateral attack[.] It grants relief that the governing statute does not permit and the court lacked fundamental jurisdiction to grant. [¶] . . . [¶] The court . . . lacked fundamental jurisdiction to order temporary relief to continue without modification until permanent judgment is determined. Paragraph 8 is void and subject to attack at any time."

We agree with Michael.

   "Essentially, jurisdictional errors are of two types. 'Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' [Citation.] When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and 'thus vulnerable to direct or collateral attack at any time.' [Citation.]" (*People v. American*

10.

*Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660; accord, *People v. The North River Ins. Co.* (2020) 58 Cal.App.5th 300, 312.) "However, 'in its ordinary usage the phrase "lack of jurisdiction" is not limited to these fundamental situations.' [Citation.] It may also 'be applied to a case where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no "jurisdiction" (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites.' [Citation.] ' "[W]hen a statute authorizes [a] prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction." ' [Citation.] When a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable. [Citations.] That is, its act or judgment is valid until it is set aside, and a party may be precluded from setting it aside by 'principles of estoppel, disfavor of collateral attack or res judicata.' [Citation.] Errors which are merely in excess of jurisdiction should be challenged directly, for example by motion to vacate the judgment, or on appeal, and are generally not subject to collateral attack once the judgment is final unless 'unusual circumstances were present which prevented an earlier and more appropriate attack.' [Citations.]" (*People v. American Contractors Indemnity Co.*, *supra*, at p. 661; accord, *People v. The North River Ins. Co.*, *supra*, at pp. 312-313.)

As previously mentioned, in the instant case, there was no written or oral agreement by the parties "specifically provid[ing] that . . . spousal support is not subject to modification or termination." (§ 3591, subd. (c).) Yet, in the absence of such an agreement, the court ordered temporary spousal support to continue "without change" in its July 23, 2018 judgment. "This is not merely a mistaken application of the law or a grant of excess relief, but a complete absence of power to accord relief, a judgment 'completely outside the scope of the court's jurisdiction to grant . . . .' [Citations.]" (*Carlson v. Eassa* (1997) 54 Cal.App.4th 684, 696.) " 'The mere fact that the court has jurisdiction of the subject matter of an action before it does not justify an exercise of a

11.

power not authorized by law, or a grant of relief to a party that the law declares shall not be granted.' [Citation.]" (*Ibid.*) " ' "Collateral attack is proper to contest lack of personal or subject matter jurisdiction or the granting of relief which the court has *no power* to grant . . . ." ' [Citation.]" (*In re Marriage of Nosbisch* (1992) 5 Cal.App.4th 629, 633.)[8]

## DISPOSITION

The December 21, 2018 order is reversed. On remand, the superior court is directed to vacate this order, address the merits of Michael S. Harvey's request for order to terminate or reduce temporary spousal support to respondent Cynthia M. Harvey, and exercise its discretion in deciding whether to grant or deny said request. Costs on appeal are awarded to appellant Michael S. Harvey.

DETJEN, Acting P. J.

WE CONCUR:

FRANSON, J.

SMITH, J.

---

[8] In view of our disposition, we need not address Michael's alternative argument.